CORNELIA A. STREETER

*v.*

ELIJAH S. STREETER.

43    155
123    286
43    155
42a    85

43    155
44a    245

43    155
47a    457

43    155
54a    333
43    155
60a    108

43    155
165    547

43    155
80a    23
81a    321

43    155
204    21154

1. VARIANCE — *between the description of a note and one produced in evidence — as to its date — fatal.* Where a note is described in the declaration as bearing date April 6, 1864, and the one produced in evidence bears date September 6, 1864, such variance is fatal. The date of a note is a matter of essential description, and must be precisely proved.

2. SAME — *when question of, cannot be raised.* But, in such case, if the execution of the note is proved, the question of variance cannot be raised, as such note is then admissible in evidence under the common counts.

3. PLEADING — *immaterial facts pleaded — become material — upon tendering an issue upon them.* Where, in an action in assumpsit, upon two notes, the defendant pleaded certain torts by way of recoupment, which the plaintiff

denied by his replication,— *held,* that the plaintiff, by tendering an issue upon them, made the matters thus pleaded a material subject of inquiry. Had he supposed no issue could be made up on the facts alleged, he should have demurred.

4. AGREEMENT — *interpretation of.* Where A, in the possession of certain land under a lease, upon which was situated a house, and cistern containing wholesome water, and an orchard, made an agreement with B to surrender to her the remainder of his demised term to said premises, and "to deliver up full and complete possession of said land" to B immediately upon the execution thereof, — *held,* that the words "to deliver up full and complete possession of the land," fairly imply a delivery of the land, house, cistern and orchard, in as good condition as they were at the time of the execution of the agreement, natural deterioration, decay and inevitable accident, excepted.

5. LEASE — *what covenants — law will imply.* The law will imply covenants against paramount title, and against such acts of the landlord as destroy the beneficial enjoyment of the premises.

6. CONTRACTS — *will be construed according to the intention of parties.* The rule is well established, that contracts should receive a reasonable interpretation according to the intention of the parties entering into them, if the intention can be gathered from the language employed.

7. RECOUPMENT — *of mutual demands arising out of the same subject matter.* It is not necessary the opposing claims should be of the same character in order that they may be adjusted in one action by recoupment.

8. SAME — *claim originating in contract — when may be set up against one founded in tort.* A claim originating in contract may be set up against one founded in tort, if the counter claims arise out of the same subject matter, and are susceptible of adjustment in one action.

9. SAME. And the converse of this proposition is true, that damages for a tort, in relation to the same subject matter on which the suit on the contract is brought, may be adjusted in that action by recoupment.

10. SAME — *concerning its benefits.* The doctrine of recoupment tends to promote justice, prevents needless litigation, avoids circuity of action and multiplicity of suits, by adjusting in one action adverse claims growing out of the same subject matter.

11. SAME — *how different from case of a technical set-off.* But unlike the case of a technical set-off, no excess can be recovered.

12. COVERTURE — *when and how may be pleaded in bar, or given in evidence.* Coverture, at the time of the entering into a contract upon which suit is brought, may be pleaded in bar, or given in evidence to defeat a recovery under the general issue *non-assumpsit* or *non est factum.*

13. SAME — *when must be pleaded in abatement.* But, when coverture has taken place since the time of entering into the contract sued upon, it must be pleaded in abatement.

14. STATUTES—*concerning act of* 1861—*relative to married women.* The act of 1861, relative to married women, does not in any wise remove the disability of the wife in respect to contracts made with her husband.

15. JUDICIAL NOTICE—*of what the court will not take.* A court cannot take judicial notice of the fact, that suitors in certain proceedings before it, have been divorced, not even if the decree of divorce was pronounced by the same court.

16. EVIDENCE—*of divorce—must be by record proof.* Proof of a divorce, can only be established by the record, unless the fact be properly admitted.

17. CONTRACTS—*to be construed by the court—effect of misinterpretation of words used.* It is a legal duty pertaining exclusively to the court, to put its own construction upon contracts in evidence before it, and if in so doing a word is misinterpreted, material to the contract, though it would be error, yet it might not of itself be sufficient ground on which to set aside a verdict, unless the jury were thereby misled.

18. WORDS—"*immediately,*" *definition of.* The word "immediately" is not to be used in the same sense, or to convey the same meaning, as the word "practicably." The former includes the latter, but not so the latter the former.

19. SAME—"*practicably.*" The word "practicable" means that which may be done, practiced, or accomplished,—that which is performable, feasible, possible; and the adverb "practicably" means in a practicable manner.

20. CONTRACTS—*concerning the time of performance.* Where two contracts were made between two parties, one, that certain premises should be immediately surrendered to the other, and the other contract, that the party surrendering the premises should take his effects away from the same whenever the other was ready to remove thereon,—*held,* that the two contracts were consistent with each other. In one, possession was to be given immediately; and, in the other, the removal of the effects was to be as soon as practicable, the law allowing to him a reasonable time.

21. SAME—*meaning of words used in—to be given by the court—except words of art or science.* It is the province of the court to give the meaning of words used in a contract in evidence before it, unless they are technical expressions, or terms of art, or science, which experts alone can explain; and it is error to leave such interpretation to be made by a jury.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

This was an action of assumpsit, brought by the appellee, in the court below, against the appellant, upon two promissory notes, one for the sum of $50 and the other for $100. The cause was tried before a jury, who rendered a verdict for

$169.20 against the defendant, upon which judgment was rendered; whereupon, an appeal was taken to this court. The facts necessary to an understanding of the questions presented for decision here, are stated in the opinion.

Messrs. BUCKLEY, MARCY & HUNT, for the appellant.

Messrs. SKINNER & MARSH, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The questions presented by this record are, first, as to the refusal of the court to exclude the note for one hundred dollars, offered in evidence by the plaintiff, on the ground of variance. The note is described in the declaration as bearing date April 6, 1864, and the one offered in evidence, and admitted against the objection of the defendant, bore date September 6, 1864.

That this is a substantial variance, cannot be questioned. The date of a note is matter of essential description, and must be precisely proved. *Spangler* v. *Pugh*, 21 Ill. 85.

The appellee insists, that this question of variance cannot be made, because the common money counts are sufficient, under which it could be admitted, its execution having been proved by a competent witness.

Appellant admits, if its execution was proved, it could be admitted under those counts, and such is the law. The action was brought on two notes, and George A. Hunt, a witness for the defendant, stated, when testifying to the agreement between these parties, signed by the appellee, that the agreement and notes sued on were executed at the same time. The paper (agreement) was signed and executed by appellee in his presence, and its execution and the notes were parts of one and the same transaction. This question is thus settled, and there was no error in admitting the note in evidence under the money counts, its execution by the defendant having been proved.

The next question made by appellant is, excluding proper testimony offered by her under her fourth plea, which was this: That the sole and only causes of action on which the

declaration is founded are the notes therein mentioned; that, when they were made, plaintiff was in possession of certain land of defendant, claiming to hold the same under a lease from her to plaintiff for a term of years not then expired, upon which land was a house, a cistern containing wholesome water, and a large number of fruit trees in good condition; that, at the making of the notes, plaintiff agreed with defendant, that he would, immediately upon the execution and delivery of the notes, deliver up possession of this land, house, cistern water and fruit trees, in as good condition as the same were then, and surrender to defendant his claim to hold the land under the lease; that this agreement was the sole consideration of the note; that plaintiff did not keep his agreement; that he did not, immediately upon the execution and delivery of the notes, or at any time afterward, deliver up the possession of the land, together with the house, cistern, etc., to defendant, in as good condition as the same were at the time of making the notes; that he withheld the possession of the land, house, etc., from defendant for a long time after the making the notes; that, while so withholding the same, he, by gross negligence, permitted the house to be destroyed by fire; that he caused coal oil to be poured into the cistern so as to render the water in it unwholesome, and girdled and killed the fruit trees; that, by reason of this failure to perform the agreement, defendant has suffered damages to the amount of five hundred dollars, which she offers to set off against the notes. This plea is accompanied by a bill of particulars, claiming therein two hundred dollars damages.

Each of the allegations in this plea was separately replied to by a denial of them. The fifth replication alleged that it was part of the agreement in the plea mentioned, that plaintiff might retain possession of the land, house, etc., for a few days, and until notified to remove therefrom by the defendant; and that he did surrender them in a few days, to wit, ten days thereafter and when notified so to do by defendant, and that she accepted the same in full performance of the agreement. Defendant rejoined to this replication denying the allegations.

Issues were made upon these replications, and on the rejoinder by defendant.

What were the issues on the four replications to the fourth plea? First, that the alleged agreement was not the consideration of the notes; second, that the plaintiff did not make the alleged agreement; third, that he performed his agreement to deliver up the possession of land, cistern and fruit trees in as good condition as they were when the agreement was made, and to surrender his claim to hold the land under the lease; and, fourth, that he did not, by his gross negligence or otherwise, permit the house to be destroyed by fire, nor cause coal oil to be poured into the cistern, nor girdle or destroy the fruit trees.

These were the issues before the jury, together with the one above stated, made by defendant's rejoinder to plaintiff's fifth replication setting up a new agreement.

The appellee contends that the allegations of *tort* in this plea are immaterial in this action, — that they are not of the substance of the plea, but surplusage, upon which no issue could be formed in any way affecting the case. But has not the plaintiff made those allegations material by tendering an issue upon them by this, his fourth, replication? Had he supposed no issue could be made upon the facts alleged, he would have made an issue of law thereon by a demurrer. These *torts* are pleaded by way of set-off or recoupment against the notes, and the plaintiff denied them — he made them, by his replication, a material subject of inquiry. He now insists, if the plaintiff did these acts, case is the proper remedy for damages by the landlord, and the only remedy, except there be a special contract against such acts, or for delivery of the possession in a certain condition, which is not shown by the record.

This leads to the inquiry, what is the true construction of the contract to deliver the possession of the premises to the landlord? It is averred in the plea, that the premises were to be delivered up " in as good condition as the same were then," whereas, by the agreement in evidence, the plaintiff agreed " to deliver up full and complete possession of the lands," and

this does not imply, that the premises should be in the same good condition. Is this so? It is usual, in contracts of lease, to stipulate, that at its termination the premises shall be delivered up in as good repair as when they were leased, natural deterioration and decay excepted; but, is not this a fair implication, without those words? And, does not the replication admit they were to be surrendered as they were when the agreement was made? In an ordinary lease, the law will imply covenants against paramount title, and against such acts of the landlord as destroy the beneficial enjoyment of the premises. *Wade* v. *Halligan*, 16 Ill. 508. And it is a well recognized rule, that contracts should receive a reasonable interpretation, according to the intention of the parties entering into them, if the intention can be gathered from their language. *Crabtree* v. *Hagenbaugh*, 25 id. 233. Can the intention of these parties be doubted or misunderstood? Was it not contemplated by both, in the absence of express covenants, that the delivering up full and complete possession of the land, included the house, cistern and orchard, as they were at the time the agreement was executed, natural decay and inevitable accident excepted? It requires no argument or authority to show this; it is too plain for either, and it is admitted by the replication.

As to the argument of appellee, that the torts charged could not be given in evidence, and, therefore, evidence relating to them was properly rejected, this court held, it was not necessary, that the opposing claims should be of the same character in order to an adjustment in one action by recoupment. A claim originating in contract may be set up against one founded in tort, if the counter claims arise out of the same subject matter, and are susceptible of adjustment in one action. *Stow* v. *Yarwood*, 14 Ill. 424; *Brigham* v. *Hawley*, 17 id. 38; *Conger* v. *Fincher*, 28 id. 347.

We are at a loss to perceive why the converse of this proposition should not also be the law, — that damages for a tort in relation to the same subject matter in which the suit on the contract is brought, should not be recouped.

11 — 43D ILL.

As this court said in *Schuchmann* v. *Knoebel, Exr.*, 27 Ill. 178, there is a natural equity, as to claims arising out of the same transaction, that one claim should compensate the other and the balance only be recovered.

It was held in *Lunn et al.* v. *Gage*, 37 Ill. 19, where a tenant entered into possession of a hotel under a lease in which the lessor covenanted to paint the building, erect a stable, and lay a side track to a cattle yard connected with the leased premises, and the landlord failed to do these things, the tenant, after abandoning the premises, was held liable for the rent for the time he occupied; but it was held also, if he suffered loss by reason of the landlord failing to repair in a reasonable time, he could recoup such damages against the rent.

In *Peck* v. *Bligh et al.*, 37 Ill. 321, the case of *Piggott* v. *Williams*, 6 Madd. 95, is referred to, where a solicitor was attempting to enforce a demand for services, and the defense was, the negligence of the solicitor in the performance of the services, and it was allowed on the principle of recoupment. See 2 Story's Eq. Jur. § 1436, note.

This doctrine of recoupment is becoming popularized in the realm of the common law; for, as was said in *Stow* v. *Yarwood, supra*, it tends to promote justice, prevent useless litigation, avoids circuity of action and a multiplicity of suits, adjusting in one action adverse claims growing out of the same subject matter, which can generally be much better settled in one proceeding than in several. But unlike, as in a technical set-off, no excess can be recovered.

In this case, the subject matter is the same. The note was given in consideration that the premises should be surrendered in as good condition as when received. The claim to a recoupment consists in damages done to the premises after the contract was made and prior to the surrender. Why turn the defendant round to her action to recover damages for the injury, when it could be estimated and allowed in the action on the note, and, if they equaled the amount of the note, then let the verdict go accordingly? Why, in any case, should there be this circuity of action, when in one action matters of

this nature can be fully investigated and adjusted? In this case, the recovery was sought on the money counts, so far as the one-hundred-dollar note was concerned, for it was evidence only in support of those counts, and to reduce the recovery on them this matter in recoupment was proper. The plaintiff had made it material by tendering an issue upon the facts alleged as the ground of the recoupment.

On the general principle of the right of recoupment, the case of *Christy* v. *Ogles' Executor*, 33 Ill. 295, the opinion in which was delivered Chief Justice CATON, and the last he delivered from this bench, can be read with instruction and advantage on this subject. There it was held, in an action of assumpsit on a promissory note given for land, the deed covenanting against incumbrances that an incumbrance on the land could be claimed by the makers in recoupment of damages in the action on the note. For the breach of the covenant in the deed against incumbrances, the defendant was entitled to recoup the amount of the damages he had sustained by reason of such breach. On the plaintiff's own admission, the premises being to be surrendered on a certain consideration, there may be recoupment for a tort, and, as we have construed the contract to be a surrender of them in as good condition as they then were, and as the plaintiff's replication admits, and if they then had a house as part, a cistern with wholesome water, and growing fruit trees, it was competent to show the premises when surrendered were despoiled by the plaintiff in the manner the defendant proposed to prove. There was no objection to the form of the interrogatory put to the several witnesses; and excluding evidence on those points was error.

The action not being on the note for $100, the claim to recoup went to the damages claimed by the plaintiff under the common counts, and under one of them, that for money had and received by defendant of plaintiff, any thing which should show the plaintiff, *ex equo et bono*, ought not to recover, may be given in evidence, especially if the matter offered grows out of the same subject matter, under the general issue.

Another point made by appellant is, that the court refused

to permit the defendant to prove she was under coverture at the time the notes were made, — that she was the wife of the plaintiff.

Coverture at the time the supposed contract was entered into, that is the execution of the notes sued on, may be pleaded in bar or given in evidence under the general issue, *non assumpsit* or *non est factum.* 1 Ch. Pl. 437. And further on it is said, when the defendant insists that no such contract as that stated in the declaration was in fact made, he must plead the general issue. Under this plea, he may give in evidence various matters of defense, which in effect admit that a contract was made, but deny that it was obligatory on the defendant, or that another person ought to be made a co-plaintiff, also the defendant's incapacity to contract, or that, at the time the supposed contract was entered into, the defendant was an infant, a lunatic, or drunk, or a *feme covert;* but coverture which has taken place since the making of the contract must be pleaded in abatement. 1 Ch. Pl. 470.

These defenses show that the plaintiff never had any cause of action. The court then erred in excluding testimony of the fact of coverture at the time the contract sued on was made. We do not conceive the act of 1861, enfranchising married women, has any application, even by a most liberal construction, to a case of this kind. The great object of that statute was to protect the property of such from the husband and his creditors, and it would, in most cases, be defeated if the husband was permitted to obtain promissory notes from the wife and then coerce the collection, to say nothing of the great domestic disquiet it would produce. We do not admit the court could take judicial notice of the fact that the parties were divorced, even if the decree of divorce was pronounced by the court trying these issues. Record proof is required in all such cases, unless the fact be properly admitted. The court or judge who granted the divorce is not permitted to call in requisition his own personal knowledge or recollection of the fact that such a decree had passed at any time.

A criticism is indulged in by appellant on the instructions

two and three given for the plaintiff, or rather upon the word "immediately," as understood and explained by the court. It was the province of the court to put its own construction upon the contract; that is a legal duty pertaining exclusively to the court, and if they have misinterpreted one word material in the collocation of words, or prominent in the contract, though it might be error, it might not of itself be sufficient ground on which to set aside a verdict, unless the jury were misled thereby. The word "immediately," as used in the plaintiff's contract to deliver up the possession of the premises, the court told the jury meant "as soon as could practically be done."

Eminent lexicographers define the word to mean something quite different. Worcester (and no one can question his transcendant ability in lexicography) defines "immediately," first, without the intervention of any other cause or event — opposed to "mediately;" second, instantly, directly, without delay, forthwith, just now. "Immediately" implies without any interposition of other occupation; instantly, or instantaneously, in an instant, or without any intervention of time; directly, without any division of attention.

The adjective "immediate" is defined as having nothing intervening either as to place, time or action; it is direct, proximate.

"Practicable" is that which may be done, practiced, or accomplished, that which is performable, feasible, possible; and the adverb "practicably" means, in a practicable manner.

Without insisting that the term "immediately" shall, in legal parlance, be confined to the same strictness, as, by the correct rules of philology, it seems to be confined, we are unable to understand that the use, by the court, of the word "practicable," conveyed to the jury the sense and meaning of the word "immediately," as used in the agreement. The former contemplates action much less speedy than the latter, and the intervention of many things not contemplated, it would seem, by the use of the latter word. They are not convertible words, for, while "immediately" includes "practicably," the latter does not include the former; and they are not synonymous. The

court authorized the jury, by the second instruction, to excuse the plaintiff, in surrendering the possession, from that diligence the terms of the several agreements imposed upon him.

The appellee insists, that the contract made on the same day between these parties, respecting certain chattels and effects which were on the premises belonging to the plaintiff, and which he had the liberty to remove, modified the obligation under which he was to give up the possession, and narrowed it down to a time when it might be practicable for him to remove these chattels; that so long as they remained on the premises, so long was the possession to be withheld.

· As we understand the two contracts, the plaintiff agreed to deliver up full and complete possession to the defendant immediately upon the execution of the two notes. The consideration of this agreement to surrender, was the release, by the defendant to the plaintiff, of all her claims upon certain personal property then on the premises, and the agreement by the defendant to deliver plaintiff twenty-five bushels of apples then on the land, and the execution of these notes. At the same time the defendant, to whom the premises were to be "instantly" surrendered, executed the other agreement, expressing her assent in the ownership by plaintiff of the personal property described in it as being on the premises, and permission was given him to take them away as soon as they could be removed.

It cannot surely be a proper inference from these terms, that the plaintiff had the right to defer the surrender of the possession until he got ready to remove his effects. Full and complete possession was to be given immediately; his effects to be taken away from the surrendered premises whenever the plaintiff was ready to remove them, and for this the law would allow him a reasonable time, so that the two agreements are perfectly consistent. The possession was to be given "immediately;" the removal of the chattels and effects as soon as "practicable."

With the view we have taken of this case, the second instruction was wrong, "immediately" not having the meaning the court gave to it; and the third instruction, leaving it to

the jury to say what the word did mean, was also wrong, for it is the office of the court, and of the court alone, to interpret contracts, and give a meaning to the words used in them, unless, perhaps, there be technical expressions, or terms of art or science, which experts only can explain.

For the reasons given, the judgment is reversed and the cause remanded.

*Judgment reversed.*