THE GALENA AND SOUTHERN WISCONSIN RAILROAD CO.

*v.*

RICHARD BARRETT.

*Filed at Ottawa June 16, 1880.*

1. CONTRACT—*construction—when several papers construed together.* Where a contract is entered into with a railroad company for a certain number of its bonds secured by first mortgage, in construing the same it should be read as if the bonds and mortgage were set out therein at length.

2. RECOUPMENT—*matters growing out of contract sued on.* A party subscribed a written agreement binding himself, on a certain condition, to take five of the bonds of a railroad company of $1000 each, for which he was to pay $650 for each bond on demand of the secretary, he also to receive five shares of

stock for each bond so taken, which bonds were secured by a first mortgage on the railroad property and run for twenty years, and bearing seven per cent interest, payable semi-annually in gold coin, which mortgage provided that if any of the interest on the bonds was not paid within ninety days after due, the entire principal and interest coupons should become immediately due. He received and paid for two of the bonds, upon which the company made default in the payment of interest for more than ninety days before it brought suit to recover damages of him for refusing to receive and pay for the other three bonds: *Held*, that the payment of interest on the bonds was a vital part of the consideration, and that the failure to pay the interest for ninety days made the bonds become due and payable, and that the party, when sued for not completing his contract, might recoup the amount due on his two bonds against the damages growing out of his refusal to accept and pay for the other three bonds.

3. PLEADING—*replication.* A replication to a plea, which neither traverses nor confesses and avoids it, is obnoxious to a general demurrer.

4. A replication to a plea of set-off of the amount due on certain railroad bonds sold and delivered under the contract sued on, which avers that since the commencement of the action suit was brought to foreclose the mortgage securing these and various other bonds by a majority of the bondholders, with the consent of the trustee, and a decree and sale had, and the property of the plaintiff, the mortgagor, bought in by a committee of the bondholders, for the benefit of all the bondholders, in proportion to the bonds held by them, is bad as showing no payment in whole or in part, or any tender, and as failing to show any proceedings to foreclose, whereby the defendant is bound and concluded.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Jo Daviess county, the Hon. WM. BROWN, Judge, presiding.

This was assumpsit, by appellants against appellee. The declaration, omitting the caption, is as follows:

"For that whereas the said plaintiffs, being a railroad company, and operating said railroad from Galena, in the State of Illinois, to Plattville, in the State of Wisconsin, and wishing to build a branch of their said railroad to Wingville and equip the same, and said plaintiffs then being insolvent and unable to raise money, and owing a large bonded and general indebtedness at the time, and for the purpose of raising money to build and equip the same, in the month of

February, A. D. 1877, the defendant, who was then president of the corporation and a bondholder of said company, with various other persons, desirous of increasing the value of their bonds by extending said railroad as aforesaid, entered into and subscribed to the following contract and agreement, by which they agreed to take the number of first mortgage bonds of the Galena and Southern Wisconsin Railroad Company and the shares of stock set opposite their respective names, and pay for the same at the rate of $650 in *cash* for each of said first mortgage bonds and five shares of stock, on demand being made by the secretary of the company, the money to be deposited in one of the banks of Galena as collected, and kept as a *special fund* to be used for building and equipping an extension of the Galena and Southern Wisconsin railroad to Wingville, the subscription not to be binding unless one hundred of the said bonds be subscribed for. Which said subscription, signed by the defendant and other persons, is in the following words and figures, to-wit:

"We, the undersigned, hereby agree to take the number of first mortgage bonds and shares of stock of the Galena and Southern Wisconsin Railroad Company set opposite our names, and to pay for the same at the rate of $650 in *cash* for each one thousand dollar bond and five shares of stock, on demand being made by the secretary of the company, the money to be deposited in one of the banks of Galena as collected, and kept as a special fund to be used for building and equipping an extension of the Galena and Southern Wisconsin railroad to Wingville. This subscription not to be binding unless one hundred of the said bonds shall be subscribed for.

*Galena, February*, 1877.

|  | No. of Bonds. | Shares of Stock. |  | No. of Bonds. | Shares of Stock. |
|---|---|---|---|---|---|
| R. Barrett, | 5 | 25 | W. Ennor, | 8 | 40 |
| W. H. Blewitt, | 5 | 25 | D. Rochford, | 5 | 25 |
| James M. Ryan, | 10 | 50 | John Lorrain, | 5 | 25 |
| J. H. Hellman, | 5 | 25 | J. A. Burrichter, | 5 | 25 |
| D. S. Harris, | 10 | 50 | R. H. McClellan, | 5 | 25 |

"Signed by the above and other persons. The said Richard Barrett, the defendant, signing the same by the name and style of R. Barrett. And said plaintiffs aver said contract and agreement here shown to the court and ready to be produced when necessary; and said plaintiffs further aver: There were one hundred of the first mortgage bonds and said shares of stock of the Galena and Southern Wisconsin Railroad Company subscribed under said contract and agreement, and the same thereby became binding and valid; and the plaintiffs further aver that the said defendant, Richard Barrett, subscribed for and bound himself to pay in cash for five first mortgage bonds and twenty-five shares of stock aforesaid, at the rate of $650 for each one thousand dollar bond and five shares of stock, on demand being made by the secretary of the company, the money to be deposited in one of the banks of Galena as collected, and kept as a *special fund*, to be used for building and equipping an extension of the Galena and Southern Wisconsin Railroad to Wingville; and the plaintiffs further aver that, by a vote of the stockholders of said Galena and Southern Wisconsin Railroad Company, duly entered of record, they agreed to build and extend a branch or extension of their said railroad aforesaid to Wingville, in consideration of said subscription and the payment to them in *cash* of the respective amounts subscribed as aforesaid, on demand being made by the secretary of the company; and the said plaintiffs further aver that the directors of said Galena and Southern Wisconsin Railroad Company, under and by virtue of the vote of the stockholders aforesaid, and in consideration of said subscription aforesaid, and the sums of money paid and to be paid on said subscription aforesaid, to said company aforesaid, said company proceeded to construct and build their said extension, or branch railroad, from Phillips' Corner aforesaid to Wingville, at great expense, to-wit, at the cost and expense of $50,000. And said plaintiffs further aver that a demand was made, to-wit, on the 10th day of May, A. D. 1877, by the secretary of the company

aforesaid, upon the said defendant, to pay for three first mortgage bonds and fifteen shares of stock as aforesaid, being for a part of the bonds and stock so subscribed for by said defendant as aforesaid, being a balance due and owing said plaintiffs from defendant of $1950, and the interest thereon from demand made, being the balance due and unpaid by the defendant on said subscription aforesaid; by means whereof, and by reason of the premises, he, the said defendant, then and there became liable to pay to the said plaintiffs the said money mentioned according to the tenor and effect of said contract and subscription, and being so liable, he, the said defendant, to-wit, on the 15th day of May, A. D. 1877, at the county and circuit aforesaid, undertook and promised to pay the said secretary aforesaid the said sums of money when afterwards requested.

" Yet the said defendant, not regarding his promises, hath not, although often requested to do so, as yet paid to the secretary or plaintiffs the said sum of $1950, and the interest thereon now due and owing to him, or any part thereof, but so to do hath wholly failed and refused and neglected to pay the same, or any part thereof, by which an action hath accrued to the said plaintiffs, to have and recover from said defendant the said sum of $1950, and the interest thereon from demand, as a *special fund* as aforesaid, to build and equip said branch or extension of said railroad as aforesaid, to their damage of $5000, and therefore they sue," etc., etc.

It is only necessary to notice appellee's fourth plea, which is as follows:

"And for a further plea in this behalf as to the said first count, said defendant says *actio non*, because he says that the terms of said supposed contract of subscription on the part of said plaintiffs with said defendant were, that on the payment of each and every sum of $650 in cash they would deliver to said defendant five shares of stock, and one of their first mortgage bonds of $1000, in and by each one of which said

bonds in the sum of $1000 in gold coin of the United States, which they promised to pay to the bearer in twenty years from the date of said bond, with interest thereon at the rate of seven per cent per annum, payable semi-annually in gold coin of the United States, on the first days of April and October of each and every year, upon the presentation and surrender of the coupons annexed thereto, as they became severally due, and which bonds were covered by a further agreement on the part of said plaintiffs, that if they should fail to pay any of said interest, when the same became due and payable according to the tenor and effect thereof, and should remain in such default for the space of ninety days, then, and in that case, the principal of said bonds should become immediately due, payable and collectable.    That in part compliance with said supposed subscription, the said defendant, on, to-wit, the 15th day of June, A. D. 1877, paid to said plaintiffs the sum of $650 in cash, and received therefor from said plaintiffs five shares of their stock and one of their said first mortgage bonds, No. 352, pursuant to said supposed subscription, bearing date the day and year last aforesaid, with interest coupons annexed thereto as aforesaid, the first thereof becoming due on, to-wit, the first day of April, A. D. 1878 ; and in the further part compliance with said supposed subscription the said defendant, on to-wit, the 15th day of June, A. D. 1877, paid said plaintiffs a further sum of $650 in cash, and received therefor from said plaintiffs, pursuant to said supposed subscription, another five shares of their stock and another of their said first mortgage bonds, No. 395, bearing date the day and year last aforesaid, with interest coupons annexed thereto as aforesaid, the first thereof becoming due on the first day of April, A. D. 1878, which said two bonds and the interest coupons thereto respectively annexed, the said defendant owned and possessed from the day of the date thereof ever since ; and said defendant avers that the said plaintiffs did not pay said interest on either one of said bonds, or any part thereof, when the same became due and payable, or at any other time whatever, according to the

tenor and effect thereof, or in any other manner whatever, but wholly failed therein, and was in default in the payment of said interest on each one of said bonds for more than ninety days before the commencement of this suit, whereby the whole principal sum of each of said bonds became and was due and payable to said defendant, as was also the interest thereon, as therein promised, before the day of the commencement of said suit, to-wit, at the county aforesaid, and said plaintiffs have not paid said two bonds, nor either one of them, nor any part thereof, to said defendant, or otherwise howsoever, nor performed in any manner their said part of said supposed contract of subscription, but have wholly failed, neglected and refused so to do, to the great damage of said defendant, to-wit, in the sum of $3000, which sum exceeds the said damages sustained by said plaintiffs by reason of the non-performance by said defendant of the other part of said supposed contract of subscription in said first count mentioned, and the said defendant is entitled, and hereby offers to recoup so much of the said damages sustained by said defendant as shall equal the said damages sustained by said plaintiffs by reason of the matters set forth in said first count. And this the said defendant is ready to verify; wherefore he prays judgment," etc.

Appellants filed two replications thereto, as follows:

*First.* And the said plaintiffs, for replication to defendant's fourth amended plea of recoupment by him filed in the above cause, say, *precludi non*, because they say that the first mortgage bonds, being numbers 352 and 395, with the coupons attached thereto, as therein pleaded, were and are the bonds and general indebtedness of the said plaintiffs, and were secured under the said first mortgage, on said railroad and its property, made on the first of October, A. D. 1872, and that said railroad company, at and before the making of the contract and agreement sued on, was *insolvent* and had made default in the payment of the interest on its bonds; and the defendant was the president of said railroad company and the holder of the

first mortgage bonds aforesaid, and wishing to build and extend said railroad to increase the value of said first mortgage bonds then held by him, and being unable to raise money therefor, said defendant and other bondholders, as aforesaid, entered into said contract and agreement sued on, at the instance and by the procurement of the said defendant, to create a *separate and special fund* for the purpose of constructing and equipping said extension or branch railroad, and the said defendant then and there subscribed for five of said first mortgage bonds for $1000 each, and twenty-five shares of stock of $100 each in said company, and agreed to pay in cash for each of said first mortgage bonds and five shares of stock aforesaid the sum of $650, as a special fund to build and extend said railroad as aforesaid; and the said defendant well knew that the said plaintiffs had made default in the payment of the coupons and interest on said first mortgage bonds, and that said first mortgage bonds, by reason of not paying the interest on said bonds, were by their terms then due and payable when said contract and agreement sued on were made and entered into; and when the bonds therein pleaded were delivered to said defendant under said contract, they were depreciated in value and sold at said depreciation in consequence thereof; and said defendant entered into said contract to give value to said bonds and procured others of his co-obligors to enter into the same to raise money as a *special fund* to build and equip said branch or extension as aforesaid, and said bonds aforesaid, when taken by said defendant, was the general indebtedness of said company, and all of said bonds, as well those to be paid under said contract as those issued before, were secured as first lien on the said railroad and the branch and an extension so to be built with said *special fund* aforesaid, and plaintiffs aver the bonds so taken by said defendant, as pleaded, in part performance of said contract sued on, as an equitable set-off or recoupment to the cause of action sued on, would be a fraud on his co-obligors and the creditors of said trust fund, and

inequitable in defeating the object of the contract sued on, and thereby enable the defendant to pay his liability to a trust fund under his *special contract* sued on, and recover against said plaintiffs on its general indebtedness and twenty-five shares of stock in said company, without any consideration therefor whatever. And this the plaintiffs are ready to verify; wherefore they pray judgment, etc.

*Second.* And the said plaintiffs, for replication to defendant's fourth amended plea, say *precludi non*, because they say that the said first mortgage bonds Nos. 352 and 395, with the interest coupons attached thereto, as therein pleaded, were first mortgage bonds on said railroad and its property, and that since the making of said contract sued on, and since the commencement of this suit, a majority of the bondholders, with the consent of the trustees named in said mortgage aforesaid, instituted proceedings in the circuit court of said Jo Daviess county, Illinois, to foreclose said mortgage in favor of said bondholders, and that a decree of foreclosure was duly entered in said court for the benefit of all the bondholders, and said railroad and all its property was under the said order and decree aforesaid, duly sold under said decree of foreclosure, to-wit, on the 3d day of May, 1879, and purchased in by a committee of bondholders as trustees for the benefit of all the bondholders in proportion to the bonds held by them; and plaintiffs aver that said bonds and the interest coupons above pleaded as a recoupment in said plea aforesaid are included in said foreclosure sale and purchase in said foreclosure proceedings aforesaid, and are not the subject matter of recoupment in said suit as pleaded. And this they are ready to verify; wherefore they pray judgment, etc.

Appellee demurred to these replications. The court sustaining the demurrer, and appellants electing to stand by their demurrer, judgment was given in favor of appellee on his fourth plea, to all of which appellants excepted. The case was taken by the present appellants, by appeal, to the Appel-

late Court of the Second District. That court affirmed the judgment of the circuit court, and appellants bring the case by appeal to this court.

Mr. M. Y. Johnson, and Mr. R. G. Ingersoll, for the appellants:

·The whole case is comprised in two propositions—first, is the plea of recoupment, as filed, an answer to the declaration, and a good plea in bar to the action? And second, are the replications, or either of them, an answer to the plea?

To determine these questions the court must look to the declaration, and the contract sued on, and construe the contract in the light of the pleadings,—the consideration for the contract—the thing done and to be done, and the object and purposes of the contract,—and then give such a construction as was intended by the parties.

A recoupment is an equitable set-off; it must be mutual between the same parties, but, unlike a set-off, is restricted to the same transaction, and will permit, in mitigation of damages, a tort or contract, to the extent of plaintiffs' damages, but no recovery can be had, as in a set-off. The damages to be recouped must grow out of the contract, or subject matter of the suit, and are allowed because the plaintiffs have not complied with some cross-obligation of the contract sued on, or have violated some duty the law imposed on them in making or performing the contract. *Waterman* v. *Clark et al.* 76 Ill. 428; *Evans* v. *Hughey,* id. 116.

The recoupment set up to pay interest on the bonds is an interpolation in the contract sued on, and is no part of it, and it was not taken into consideration in making the contract, any more than that the stock would pay a dividend. The breach set up, and what is attempted to be recouped, is an independent contract. The contract to pay interest on the bonds has no connection with the contract to purchase the bonds and stock.

We may be told, in a suit upon a promissory note given for

land, damages under a covenant in the deed of the land may be recouped against a suit on the note, when the note and deed are separate instruments; and they may cite, *Christy* v. *Ogle's Exrs.* 33 Ill. 295; *Sheeler* v. *Sheeler*, 43 id. 163; *Sawyer* v. *Fincher*, 27 id. 347; *Prairie Farmer Co.* v. *Taylor*, 69 id. 440.

In all these cases the damages to be recouped grow out of the contract, or subject matter of the suit, and are allowed because there has been a non-compliance with some cross-obligation of the contract sued on, or some violation of duty the law imposed, in making or performing the contract sued on; and the same may be said of *Haskell* v. *Brown*, 65 Ill. 29.

What is recoupment? The books declare it to be an equitable set-off. It is keeping back, withholding an amount due, stopping payment in mitigation of damages growing out of the contract sued upon. *Stow* v. *Yarwood et al.* 14 Ill. 426; *Hubbard* v. *Rogers*, 64 id. 437; *Waterman* v. *Clark et al.* 76 id. 430; *Whitney* v. *Lewis*, 21 Wend. 133.

The contract sued on is an agreement between the co-obligors to purchase bonds and stock to create a special fund to build an extension to the railroad. It is a trust fund for that special purpose, set aside and separated from the money of the company, to be deposited in the bank as a special fund.

Under a recoupment the defendant may show any violation of the contract sued on, that goes to show the consideration less valuable, but he must resort to an independent action for damages affecting him in any other respect. 8 Mees. & Wel. (Ex. R.) 858; 8 Campb. R. 450; 1 Brown (Ky. R.) 33; 9 How. (U. S. R.) 231.

There can be no recoupment in setting up the breach of an independent contract to the one sued on. *Batterman* v. *Pierce*, 3 Hill, 171.

The right of the defendant to recoup damages is allowed, only, on the ground the plaintiffs have not complied with some cross-obligation of the contract sued on, or have violated some duty the law imposed on them in making or performing

the contract sued on. 4 Wend. 483; 10 Barb. 55; 3 Ind. 72, 365; 4 id. 533; 15 B. Mon. 454; 7 Ala. (N. S.) 753; 17 Ark. 270; 4 Mich. 619; 39 Maine, 382.

But this plea does not answer the whole declaration, or admit or avoid it.

The two replications are good answers to the defence presented by the plea. They avoid the plea and entitle the plaintiffs to recover.

Messrs. D. & T. J. Sheean, for the appellee:

Under the statute, no mutuality of debts or demands is required; but in any action upon any contract any claim or demand may be set off, and any bond or other instrument, under seal, may be set off, and demands on simple contracts may be set off against demands on sealed instruments, judgments and decrees. Rev. Stat. 1874, p. 777, secs. 19–30.

The words, "claims and demands," embrace more modes of indebtedness than "mutual debts," under the English statute. Our statute is more comprehensive, embracing claims and demands of any description as subjects of set-off; but under the English statute they must be mutual and due in the same right. *Edwards* v. *Todd,* 1 Scam. 463; *Heckenkemper* v. *Dingwehrs,* 32 Ill. 540.

Statutes of set-off should receive a liberal construction. From feeble beginnings they have been successively enlarged. Waterman on Set-off, p. 25, sec. 24.

An agreement to pay in cash, or in any specific way, or an express negative of set-off, does not prevent set-off. 2 Pars. on Cont. 248.

Demands are due in the same right where each may be sued for without specifying any representative character, and the party to the suit has a legal right to the application of the funds when collected. Wat. Set-off, p. 176, sec. 150.

The rules of set-off are the same in equity as at law. Ibid. 125, n. *.

If not a proper set-off at law, there is no relief in equity, unless the plaintiff is insolvent. Ibid. 471, sec. 450; 19, sec. 17.

Assignment of a judgment by an insolvent affords equitable grounds of set-off against it in the hands of the assignee, even in a case free from fraud. Ibid. 453, sec. 434, n. *.

A debt paid by a surety may be set off, in equity, against his subscription for stock assigned to and sued for by a creditor of an insolvent railroad company in its name. Ibid. 455, sec. 455, n. *.

A claim for lumber may be set off against a note given after insolvency, in payment for a subscription to stock in an insolvent joint stock corporation. Ibid. 191, sec. 166.

Recoupment is a departure from the rules of law, to do equity at law, when it could not otherwise be attained, or without expensive process. It arises out of, or is connected with, the contract in suit. Ibid. 480, secs. 463, 464.

It is but an improvement on the doctrine of failure of consideration. Ibid. 481.

It is properly set up by plea, thereby apprising the plaintiff, in advance, of the defence. *Waterman* v. *Clark,* 76 Ill. 431.

As to other and various cases in which recoupment is allowable, counsel cited, *Christy* v. *Ogle's Exrs.* 33 Ill. 295; *Streeter* v. *Streeter,* 43 id. 163; *Sawyer* v. *Fincher,* 27 id. 347; *Prairie Farmer* v. *Taylor,* 69 id. 440; *Haskell* v. *Brown,* 65 id. 29; *Fessler* v. *Love,* 43 Pa. St. 313; Waterman's Set-off, 482, 557, 519, 490, 536–7.

The replications are both substantially bad, and present no answer to the plea.

Per Curiam: The grounds upon which the judgment of the Appellate Court is sought to be reversed, are:

1. There can be no recoupment on account of the failure to pay the interest due upon the bonds paid for by appellee and delivered to him on the contract upon which suit is brought.

2. The plea of recoupment is not a sufficient answer to the declaration.

3. Assuming the plea to be a sufficient answer to the declaration, the replications are a sufficient answer to it.

The first and second of these grounds will, for convenience, be considered together.

The contract declared upon is: "We, the undersigned, hereby agree to take the number of first mortgage bonds and shares of stock of the Galena and Southern Wisconsin Railroad Company set opposite our names, and to pay for the same at the rate of $650 in cash for each $1000 bond and five shares of stock, on demand being made by the secretary of the company, the money to be deposited in one of the banks of Galena as collected, and kept as a special fund, to be used for building and equipping an extension of the Galena and Southern Wisconsin railroad to Wingville. This subscription not to be binding unless one hundred of the said bonds shall be subscribed for."

The first mortgage bonds of the Galena and Southern Wisconsin Railroad Company, which the subscribers thus agree to take, bind appellants to pay the amount thereof in gold coin of the United States to bearer, in twenty years from date, with interest thereon at the rate of seven per cent per annum, payable semi-annually, in gold coin of the United States, on the first days of April and October of each and every year, upon the presentation of the coupons annexed thereto as they severally become due. And they are affected by the further agreement on the part of appellants, set forth in the mortgage, that if they should fail to pay any of said interest, when the same becomes due and payable according to the tenor and effect of the bond, and should remain in default for the space of ninety days, then and in that case, the principal of said bonds should become immediately due and payable and collectable, as is shown by the plea.

And it is alleged in the plea that, "in compliance with said supposed subscription (the contract) the said defendant,

(appellee) on the 15th day of June, 1877, paid to said plaintiffs (appellants) the sum of $650 in cash, and received therefor from said plaintiffs (appellants) five shares of their stock and one of their said first mortgage bonds, No. 352, pursuant to said supposed subscription (the contract), bearing date the day and year last aforesaid, with interest coupons annexed thereto as aforesaid, the first thereof becoming due on the first day of April, 1878; and in the further part compliance with said supposed subscription (the contract) the said defendant (appellee), on the 15th day of June, 1877, paid said plaintiffs (appellants) a further sum of $650 in cash, and received therefor from said plaintiffs (appellants), pursuant to said supposed subscription (the contract), another five shares of their stock and another of their said first mortgage bonds, No. 395, bearing date the day and year last aforesaid, with interest coupons annexed thereto as aforesaid, the first thereof becoming due on the first day of April, 1878, which said two bonds, and the interest coupons thereto respectively annexed, the said defendant (appellee) owned and possessed from the day of the date thereof ever since; and said defendant (appellee) avers that the said plaintiffs (appellants) did not pay said interest on either of said bonds, or any part thereof, when the same became due and payable, or at any other time whatever, according to the tenor and effect thereof, or in any other manner whatever, but wholly failed therein, and was in default in the payment of said interest on each one of said bonds for more than ninety days before the commencement of this suit, whereby the whole principal sum of each of said bonds became and was due and payable to said defendant (appellee), as was also the interest thereon, as thereon promised, before the day of the commencement of said suit,  *   *
and said plaintiffs (appellants) have not paid said two bonds, nor either one of them, nor any part thereof, to said defendant (appellee), or otherwise howsoever, nor performed in any manner their said part of said supposed contract of subscription (the contract), but have wholly failed, neglected and

refused so to do, to the great damage of said defendant (appellee), to-wit, in the sum of $3000, which sum exceeds the said damages sustained by said plaintiffs (appellants), by reason of the non-performance by said defendant (appellee) of the other part of said supposed contract of subscription in said first count mentioned, and the said defendant (appellee) is entitled, and hereby offers to recoup so much of the said damages sustained by the said plaintiffs (appellants), by reason," etc., etc.

In giving a construction to the contract, it should be read as if the bonds and mortgage were set out therein at length, and thus reading the contract, it is manifest that the undertaking, on the part of appellee, is in the nature of a promise to make a loan to appellants of the amount indicated by the subscription, for the length of time, and upon the terms specified in the bonds and mortgage, for the bonus of the stock.

The payment of interest, in this view, is a vital part of the consideration, and affects the entire contract. By the terms of the bonds the failure to pay interest for the prescribed ninety days, made the bonds become due and payable, and on the principle of *Christy* v. *Ogle's Exrs.* 33 Ill. 295, and *Streeter* v. *Streeter*, 43 Ill. 155, appellee has the right to recoup the amount.

In the present suit no other parties than the appellants and the appellee have any interests that can be regarded. Nor do we conceive that there is anything in the character of the contract between appellants and appellee that exempts it from the application of the doctrine of recoupment. The contract was directly between appellants and appellee, and not between different stockholders, and the mere promise that the money should be used in a particular way did not create a trust devoting it to that particular use and no other. There is no undertaking that the money should be used for no other purpose than that specified, and the implication is that it should be used for that purpose only if deemed necessary.

It does not appear here that any others than appellants have claims upon this fund, for we can not regard the mere statement in the declaration, that the suit is for the use of a particular person, evidence upon which to base a decision.

We are of opinion that there can be a recoupment on° account of the failure to pay the interest due upon the bonds paid for by appellee and delivered to him, and that the fourth plea is a sufficient answer to the declaration.

The first replication to the fourth plea neither traverses nor confesses and avoids it, and for this reason was obnoxious to a general demurrer.

The second replication attempts to set up matters in avoidance of the fourth plea. It does not show payment in whole or in part of the bonds nor any tender thereof, nor any proceeding in regard to such bonds by which appellee is bound and concluded.

The demurrer was properly sustained to both replications. We see no cause to disturb the judgment of the Appellate Court.

*Judgment affirmed.*