## C. O. Harz v. Louis Peterson.

1. CONSTRUCTION OF CONTRACTS—*Unreasonable Advantages.*—A contract should never be construed so as to give one party an unfair or an unreasonable advantage over another, unless such was the manifest intention of the parties at the time it was made.

2. SAME—*Mutuality and Justice Between the Parties.*—It is one of the cherished objects of the law to maintain a reciprocity between the parties to contracts, whenever it can be done without doing violence to the language used.

3. SAME—*Must Have Mutuality.*—A contract must have mutuality to it, and a construction which works a hardship ought not to be adopted unless the contract will bear no other.

4. INSTRUCTIONS—*Not to Submit the Construction of a Contract to the Jury—Technical Words and Terms of Art or Science.*—An instruction which submits to the jury the interpretation of a contract is erroneous; it is for the court alone to construe written contracts, except where technical words, or terms of art or science are used.

Assumpsit, on a contract for wages. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1898. Affirmed. Opinion filed January 24, 1899.

GURLEY & WOOD, attorneys for appellant.

MORSE, IVES & TONE, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The appellee agreed to work as a driver of livery carriages for the appellant, a livery stable keeper, for wages to be fixed from time to time. The testimony showed the wages were to be $25 for the first month, and $30 per month thereafter. Among the agreements made by appellee were the ones in controversy, viz.:

" 6th. First party (appellee) agrees that he shall be held responsible to second party for everything entrusted to his care and will respond in damages to the value of the damage to any vehicle or other property of the second party while in his care, and second party shall have the right to deduct from the wages due or to become due to first party the amount of all such damages.

It is further agreed by first party that he will hold second party harmless from any damage done by first party to any other person through first party's fault, carelessness or negligence; and in case second party shall be compelled to respond in damages to any person so damaged by the fault, carelessness or negligence of first party, second party shall have the right to deduct from the wages due or to become due to first party the amount of such payment."

Appellee worked from December 23, 1896, to April 5, 1897, a period of three months and twelve days, when he quit work, as by the terms of the contract he might rightfully do. He brought suit for the wages due him, and recovered judgment for $37.

This amount was exactly right, as we figure, charging appellee with payments made to him, and for the number of days he was absent as shown by appellant's book, if appellee be excused from liability for damages, under the contract stipulations above quoted.

The damages claimed by appellant to have been caused by the appellee, occurred by the running away of a team and carriage in the temporary care of the appellee.

There was no agreement by appellant to furnish reasonably safe horses, carriage or harness for appellee to drive. It was appellee's duty to take such of them as he was ordered to take, and to drive where he was bidden.

An instruction was asked by appellant which, in effect, announced to the jury, as a matter of law, that appellee was an insurer of the safety of all property entrusted to his care, and the court refused to give it. Such requested instruction was based upon the first paragraph of the quoted part of the writing signed by appellee. Presumably the trial judge considered the agreement, in that respect, as lacking in mutuality, and as unreasonable and oppressive. To hold appellee absolutely responsible to the extent of the total damage to property intrusted to his driving, without reference to his fault, would, under the circumstances of his employment, be harsh and oppressive in the extreme. In view of the amount of his wages and of his lack of right to select or choose what he should drive, it is quite improb-

able that it was intended he should be held liable for the
total value of horses, carriage and equipment, amounting
to, perhaps, a thousand dollars or more, every time he drove
out.   In the construction of contracts a court will, when-
ever the terms of a contract admit of it, lean to what is
beneficial, mutual and just as between the parties.   Bishop
on Contracts, Sec. 417.

"We should never so construe a contract as to give one
party an unfair or an unreasonable advantage over another,
unless such was the manifest intention of the parties at
the time it was made.   *   *   *   It is one of the cher-
ished objects of the law to maintain a reciprocity between
the parties to contracts, whenever that can be done without
doing violence to the language used."   Gale v. Dean, 20 Ill.
320.

The obligation should be mutual or reciprocal; it should
not be by one party only.   County Commissioners v. Jones,
Breese, 237.

A contract must have mutuality to it, and a construction
that would work a great hardship ought not to be adopted
unless the contract will bear no other.   Bangor Furnace Co.
v. Magill, 108 Ill. 661.

We think the instruction was properly refused upon the
grounds spoken of.

But there is another objection to the instruction.   It sub-
mits to the jury the interpretation of the contract.   Courts
alone may interpret or construe written contracts, except
when technical words or terms of art or science are used.
Streeter v. Streeter, 43 Ill. 155; Sigsworth v. McIntyre, 18
Ill. 126.

The contract, without any instruction as to its meaning,
was before the jury, together with all the evidence, con-
flicting upon the question of whether the appellee was care-
less or at fault in the care and management of the team,
and their verdict must be regarded as having settled every
question of fact that was in controversy.

The judgment will be affirmed.