MASSASOIT HOUSING CORPORATION *vs.* TOWN OF NORTH KINGSTOWN *et al.*

MARCH 31, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J.   This bill in equity in substance and effect sought an injunction against the charging of excessive, unreasonable and discriminatory water rates as well as specific performance of a written contract relating to the installation of certain water facilities, and an incidental accounting thereunder.   The complainant is a Rhode Island corporation, and the respondents are the town of North Kingstown, the treasurer thereof and the members for the time being of its water works commission.

In the superior court the complainant abandoned its claim that the rates were excessive or unreasonable, and the cause proceeded to a determination of the questions whether such rates were discriminatory and whether complainant was entitled to specific performance and refunds

in accordance with the written agreement of the parties. The cause is before us upon the respondents' appeal from a decree finding no such discrimination but granting specific relief. Since the enforcement of the written contract depended upon the construction of an ambiguous paragraph thereof, the sole question raised is whether the trial justice erred in his interpretation of the sixth paragraph of the agreement as set forth in the decree as follows: "That by virtue of the provisions of the Agreement between the complainant and the Town of North Kingstown dated December 17, 1942 and more particularly the provisions of Paragraph 6 thereof, complainant is entitled to receive from respondents and respondents shall pay to the complainant to the extent not heretofore paid refunds from water charges heretofore or hereafter paid by complainant and/or by other persons for water furnished to the dwelling houses now owned by the complainant and the houses that have been sold and such as may hereafter be sold by the complainant, as provided in and subject to the provisions consistent herewith of said Agreement between the complainant and the Town of North Kingstown dated December 17, 1942."

The complainant under the provisions of a federal housing act had erected 100 duplex houses, making 200 units in all, on a plat of land known as "Yorktown Manor," on and near the Post Road, so called, in the town of North Kingstown. These houses were constructed to provide housing facilities at reasonable rates of rental for war workers and members of the armed services and their families. Payment of mortgages on the houses was guaranteed by the federal government up to $10,000 on each house, a total of $1,000,000, and the rental for each housing unit was set by the National Housing Agency.

In 1942, while these houses were in process of construction, complainant made application to the water works commission for a supply of water to be furnished on the land and at the 100 duplex houses referred to above. This

application was approved, and on December 17, 1942 a written agreement was entered into between complainant and the town through its water works commission whereby complainant was to provide and install the necessary mains, piping, valves and connections in and upon its premises from the curb cock in the Post Road, and make service connections from said mains from a curb cock in front of each of the proposed 100 houses and also to furnish and install four hydrants, all in accordance with the requirements of the specifications annexed to the agreement and made a part thereof. The complainant was to furnish all materials, supplies, equipment and labor and perform the work to completion in a proper and workmanlike manner.

The fifth paragraph of the agreement reads: "Upon the completion of the installation the Massasoit Housing Corporation will convey or transfer to the Town said system and evidence the same by a proper instrument in writing, and thereupon the Town and its Water Works Commission will maintain and operate said system as part of its public supply system."

The sixth paragraph provides: "In consideration of said conveyance or transfer of said system to the Town, the Town and its Water Works Commission will pay to the Massasoit Housing Corporation the entire cost to it of its furnishing and installing said system or so much thereof as may be paid, in the following manner only: The Town and its Water Works Commission shall, on or before the tenth day of January of 1943, and on or before the tenth day of January annually thereafter for a period of ten years or until January, 1953, refund to the Massasoit Housing Corporation twenty-five per cent. of the amount paid by the said Corporation for water supplied the houses at said Yorktown Manor during the calendar year ending December 31st prior thereto, but the amount of such refund for any year shall not exceed ten per cent. of the total actual cost of said construction nor ten per cent. of the sum of a total cost of $13,000.00, and no further refund shall be made

for any annual period after the year ending December 31, 1952."

The installation agreed upon was completed and conveyed to the town, as provided in the fifth paragraph, at an agreed cost of $13,000. When the agreement was executed on December 17, 1942 there were federal restrictions which prevented the sale of the houses. These restrictions were subsequently removed and at the time of the hearing in the superior court the complainant had sold 29 duplex houses, or 58 units, leaving 71 duplex houses, or 142 units, still owned by it. At the time each of these units was sold by the complainant, the individual meter was changed to the name of the purchaser, and the water bills were thereafter paid by him and accepted by the water works commission.

The town has made annual refunds to the complainant based only on the amount of water supplied to houses owned by the latter. The respondents contend that such payments are in accordance with the agreement; that complainant is bound by the terms thereof; and that no credit or refund should be allowed on water used and paid for by any person or persons other than the complainant.

The complainant contends that a court of equity should not hold it to a literal construction of a part of the agreement, but should consider the dominant purpose and intention of the parties as evidenced by the entire agreement; that the important and essential language of the sixth paragraph, quoted above, is: "In consideration of *said conveyance or transfer of said system to the Town,* the Town and its Water Works Commission will pay to the Massasoit Housing Corporation the *entire cost to it* of its furnishing and installing said system"; that to hold otherwise would result in an unjust enrichment to the town at the expense of the complainant and in effect amount to a forfeiture, abhorrent to equity and good conscience. (italics ours)

A careful consideration of the agreement and the circum-

stances existing at the time.of its execution leads us to the conclusion that the essence thereof was the repayment to the complainant by the town of the *entire cost* of its installation, namely, $13,000. The complainant made the installation in accordance with its agreement, and conveyed it to the town in consideration of the town's promise through its water works commission to pay the complainant the *entire cost* of furnishing and installing the water system referred to in the agreement. The agreement further provided that the respondents "shall, on or before the tenth day of January of 1943, and * * * annually thereafter for a period of ten years * * * *refund to the Massasoit Housing Corporation* twenty-five per cent. of the amount paid by the said Corporation *for water supplied the houses* * * *." (italics ours)

In our opinion the essence of the agreement appears to provide for repayment of the entire cost of installation, such repayment to be dependent upon and made out of the sums of money received by the town *for water supplied the houses.* It is true that at the time of the agreement the parties may have contemplated that all the water bills would be paid by the complainant, but only because existing federal restrictions prevented the sale of the houses. At any rate *payment* of these water bills was the vital factor in the agreement and payment by the complainant was only a minor incident and detail. There was no agreement that the complainant should hold title to these houses during the entire life of the agreement. The clear purpose thereof was to have the complainant install the water system, turn it over to the town upon completion, and receive from the latter the *entire cost* of its construction, not at once but in specified deferred payments as above mentioned. To hold otherwise would be to defeat the clear intention and understanding of the parties at the time the agreement was entered into.

There is ample authority to the effect that the main purpose of a contract is to be given effect if possible and

that any minor and merely incidental provisions are to be construed so as not to defeat that purpose. Where a contract admits of two constructions, as in the instant cause, the general rule is that the court should adopt that construction which is most equitable and which will not give to one party an unconscionable advantage over the other; and where the meaning is doubtful a construction which will entail a forfeiture should be avoided, especially where there is nothing in the language used which expressly requires such result. *Allemong* v. *Augusta National Bank,* 103 Va. 243; *Harz* v. *Peterson,* 80 Ill. App. 21.

Furthermore, as stated in 12 Am. Jur., Contracts, §241, one of the cardinal rules of construction of agreements is that the meaning should be gathered from the entire context and the language should be interpreted so as to subserve, and not subvert, the general intention of the parties, and where a contract as a whole discloses a given intention and certain words or clauses would, if taken literally, defeat the intention, they should be interpreted, if possible, so as to be consistent with the general intent.

Applying the above principles of law to the instant cause we are of the opinion that the trial justice properly construed the pertinent provisions of the agreement. To construe it according to the respondents' contention would defeat the obvious purpose and essence of the agreement simply because of an expression regarding the mere method or manner in which refunds were to be made to the complainant, and would also result in unjust enrichment to the town and in forfeiture to the complainant. We find no error in the decree appealed from.

The respondents' appeal is denied and dismissed; the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Albert A. Baker,* for complainant.

*Perkins, Higgins & McCabe, James A. Higgins,* for respondents.