**Frances VICKERS ANTONE**

v.

**Thomas R. VICKERS.**

**No. 90–533–Appeal.**

Supreme Court of Rhode Island.

July 3, 1992.

Michael R. McElroy, Schacht & McElroy, Providence, for plaintiff.

Gilbert T. Rocha, East Providence, Constance M. Pannone, Smithfield, for defendant.

## OPINION

KELLEHER, Justice.

This civil matter comes before us as a result of an appeal by the plaintiff, Frances Vickers Antone (Frances), from a Family Court order denying her motion to adjudge the defendant and former husband, Thomas R. Vickers (Thomas), in contempt for failure to comply with the final judgment of the divorce. Frances also appeals the granting of Thomas's motion to modify the final divorce judgment. We affirm.

On May 19, 1985, Thomas and Frances were divorced by final judgment after twenty-four years of marriage. In the hearing on the merits at which Thomas was not represented by counsel, the trial justice accepted and approved a property-settlement agreement (agreement) reached between the parties and merged the agreement into the decision and judgment. Paragraph 4 of the agreement, which comprises the nucleus of this dispute, provides:

> "Forthwith, upon execution of this Agreement, the Husband shall execute and deliver to wife a deed in form satisfactory to the Wife's counsel, conveying all of his right, title and interest in and to

property at 70 Holland Avenue, in said East Providence, including all of the buildings and improvements thereon, subject to the existing mortgage of the same.

"The wife shall pay all of the expenses related to said Holland Street property including but not limited to mortgage payments, taxes and insurance from the date of the delivery of said Deed, and the husband shall have no liability to pay the same.

"The Husband shall save the Wife harmless with respect to the claims of any creditors of the Husband asserted against said real property and shall promptly cause any attachments on said property made with respect to claims against the Husband to be discharged, excluding the balance of the curbing bill owed to the City of East Providence, for which Husband and Wife will each pay one-half (½) of the balance.

"In the event that said real property is sold, one-half (½) of the proceeds of sale (less all reasonable closing expenses) shall belong to each of the parties and, notwithstanding the provisions of the tax code in effect at the time of sale both parties shall be responsible for one-half (½) of any said capital gain and the tax resulting therefrom. In addition, there shall be deducted from the Husband's one-half (½) share, one-half (½) of the present value of the Husband's pension plan as of the date of this Agreement. The present value is approximately $5,150.00.

"The Wife shall have sole authority to agree to any sales price for the real property that she feels is reasonable and may select the Broker, Attorney, etc. and otherwise take all steps necessary to sell said property without obtaining the consent of the Husband."

In violation of the above portion of the agreement, Thomas failed to convey his interest in the property to his wife. Frances continued to pay the mortgage, taxes, and related expenses for the property. However, it must be noted that in 1989 Frances remarried and no longer resides in the house in question. Moreover, the parties' minor daughter has completed her college education and has moved away. In fact, the property is rented, and Frances is collecting money therefrom, a practice prohibited under the initial financing arrangement for the property with Rhode Island Housing and Mortgage Finance Corp. (RIHMFC), which required that the mortgaged property be occupied by an owner. Subsequently RIHMFC demanded that Frances repay the RIHMFC mortgage on the property. In order to discharge this debt, Frances initiated suit against her former husband and demanded that Thomas convey his interest to her so that she could attempt to obtain refinancing.

On October 10, 1990, the trial justice denied Frances's motion to hold Thomas in contempt and granted in part Thomas's motion to modify and/or amend the final judgment. The trial justice concluded that the failure to sell the house would result in the enforcement of an illusory promise, as the agreement evidenced an intent of both parties to sell the property in the future. Further the trial justice ordered Frances to put the property up for sale and to disburse the proceeds in accordance with paragraph 4 of the final judgment.

 Both statutory and case law establish the principle that the Family Court has broad jurisdiction over equitable matters that arise as a result of the familial relationship. General Laws 1956 (1985 Reenactment) § 8–10–3(a), as amended by P.L.1988, ch. 84, § 7 marks the ambit of the Family Court's authority

"[t]o hear and determine all petitions for divorce * * * and other matters arising out of petitions and motions relative to real and personal property in aid thereof, including * * * such other equitable matters arising out of the family relationship, wherein jurisdiction is acquired by the court by the filing of petitions for divorce * * * property settlement agreements and all other contracts between persons, who at the time of execution of said contracts, were husband and wife." *See also Lubecki v. Ashcroft,* 557 A.2d

1208, 1211–12 (R.I.1989); *Fox v. Fox*, 115 R.I. 593, 596, 350 A.2d 602, 603 (1976). In this instant controversy, the trial justice correctly determined that it was within the Family Court's jurisdiction to enforce the agreement. A thorough examination of the record indicates that the trial justice observed that he did not consider his order as amending the agreement but instead as construing certain ambiguities within the agreement. The trial justice determined that a reasonable person would conclude that at the time the agreement was entered into, Thomas did not consider the fact that Frances would use the marital domicile purely for rental income but instead believed that the home would be retained for the use of his former wife and minor child indefinitely. The trial justice noted the fact that Frances had remarried and was renting the marital domicile, apparently a use not contemplated in the original agreement. Consequently the one-year time limit barring a motion for relief from a judgment or decree pursuant to G.L.1956 (1985 Reenactment) § 9–21–2(b) and the parallel prohibition pursuant to Rule 60 of the Rules of Procedure for Domestic Relations are inapplicable here.

In her appeal Frances contends that the trial justice erred in determining that paragraph 4 described an illusory promise if the provision was not interpreted in such a fashion so as to allow Thomas to force the sale of the property.

■ An illusory promise is one comprising words that "form a promise that is conditional on some fact or event that is wholly under the promisor's control and his bringing it about is left wholly to his own will and discretion. This is not true, however, if the words used do not leave an unlimited option to the one using them. It is true only if the words used do not in fact purport to limit future action in any way." 1 *Corbin On Contracts*, § 149 at 657 (1963). Frances was obligated to make mortgage payments as well as tax, insurance, and related payments for purposes of maintaining the marital domicile. These additional responsibilities belie the claim that her promises were merely illusory.

However, this court is of the opinion that it is nonetheless ambiguous.

■ The effect of the agreement is controlled by the actual terms that are included in the contract. "When the terms are found to be clear and unambiguous, the task of judicial construction is at an end. The contract terms must then be applied as written and the parties are bound by them." *Aetna Casualty & Surety Co. v. Graziano*, 587 A.2d 916, 917 (R.I.1991)(quoting *Malo v. Aetna Casualty and Surety Co.*, 459 A.2d 954, 956 (R.I. 1983)). Prior to construing the provisions of a contract, this court must first discern whether an ambiguity exists. *Bush v. Nationwide Mutual Insurance Co.*, 448 A.2d 782, 784 (R.I.1982). In determining whether a contract is clear and unambiguous, we view the agreement in its entirety and give to its language its "plain, ordinary and usual meaning." *Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550, 552 (R.I.1990)(quoting *Sentry Insurance Co. v. Grenga*, 556 A.2d 998, 999 (R.I.1989)); *Malo*, 459 A.2d at 956. A court shall conclude that a contract is ambiguous if it is "reasonably susceptible of different constructions." *Westinghouse Broadcasting Co. v. Dial Media, Inc.*, 122 R.I. 571, 579, 410 A.2d 986, 991 (1980).

■ When the contested provision of a contract or agreement is capable of two separate constructions, this court has previously stated that it should "adopt that construction which is most equitable and which will not give to one party an unconscionable advantage over the other; and where the meaning is doubtful a construction which will entail a forfeiture should be avoided, especially where there is nothing in the language used which expressly requires such result." *Massasoit Housing Corp. v. Town of North Kingstown*, 75 R.I. 211, 217, 65 A.2d 38, 40 (1949).

In the instant controversy both parties clearly espoused wholly different interpretations of paragraph 4. Frances contends that the trial justice erred in modifying the final judgment because he granted Thomas's motion to modify and/or amend the agreement. Furthermore, Frances main-

tains that what she contracted for, that is, a lack of obligation to sell the marital domicile at any particular time, is a reasonable and fair construction of the provision. Thomas argues that although he testified and understood the agreement to mean that the property may "never" be sold, he intended the property never to be sold so as to afford his ex-wife and daughter a home and not the scenario that is now before us.

We believe the trial justice was correct in his decision in addressing the substance, if not the form, of Thomas's pleading to modify and/or amend the agreement before him. The trial justice did not redistribute the property or alter the obligations of the parties. Realizing that the parties intended that the property could never be sold during the time in which Frances and their youngest daughter resided in the home, the trial justice concluded that the motivation for providing the home no longer existed, as Frances had remarried, vacated the home, and was collecting rent therefrom. Consequently the marital domicile had served its purpose. He applied the correct rules of contract interpretation when he construed the evidence presented to determine the meaning of the language in paragraph 4, as a trial justice's primary task is to ascertain the intent of the parties. *Woonsocket Teachers' Guild, Local 951 v. School Committee of Woonsocket,* 117 R.I. 373, 376, 367 A.2d 203, 205 (1976). Indeed, the trial justice neither modified nor reformed the agreement but simply clarified a necessary factual ambiguity regarding the intentions of the parties in order to enforce the agreement.

The plaintiff's appeal is denied and dismissed. Accordingly we affirm the denial of Frances's motion to adjudge Thomas in contempt and affirm the granting of Thomas's motion to modify the final judgment of divorce.