**Lucia M. FLYNN**

v.

**Raymond A. FLYNN.**

**No. 91–397–APPEAL.**

Supreme Court of Rhode Island.

Oct. 23, 1992.

Shayle Robinson, Robinson & Robinson, Cranston, for plaintiff.

Gregory A. Madoian, Charles Butterfield, Jr., Ltd., Warwick, for defendant.

OPINION

MURRAY, Justice.

This case came before us on appeal by the plaintiff, Lucia M. Flynn, from a Family Court order denying her motion to adjudge the defendant and former husband, Raymond A. Flynn, in contempt for failure to comply with the final judgment of the parties' divorce. The issue decided below and raised in this appeal is whether the term "inheritance" as used in the parties' property-settlement agreement includes funds received by the defendant as a beneficiary to a trust upon the settlor's death.

The parties were granted a divorce by a final judgment of the Rhode Island Family Court on December 31, 1981. Four months earlier, the parties had entered into a property-settlement agreement, which was ultimately approved by the Family Court, incorporated by reference, and merged into the final judgment. The pertinent provision of that agreement is set forth as paragraph 10:

> "In the event [defendant], during his lifetime, and during the lifetime of [plaintiff], receives an inheritance not less than $40,000.00, then, in that event, [defendant] shall pay to [plaintiff] at the time of the receipt of said inheritance, the sum of FORTY THOUSAND ($40,000) dollars."

The terms of this provision would not be effective in the event that either party died prior to defendant's actual receipt of any distributed inheritance.

In November 1985 defendant's mother, Rosanna Barclay Craft (Mrs. Craft), executed an inter vivos trust and designated her two sons, including defendant, cotrustees and beneficiaries of the trust who would share equally in the residue of the trust corpus. Mrs. Craft passed away on or about January 26, 1987. Her will and two accompanying codicils were admitted for probate in Florida, where the will and the trust were both executed. The inventory of Mrs. Craft's estate as submitted to the Florida Probate Court reflected a gross estate of approximately $3,940, of which defendant received $1,970 upon its probate discharge. As a beneficiary of his mother's trust, however, defendant received a sum in excess of $290,000 on or about December 9, 1987.

Subsequent to defendant's receipt of this large sum of money and his failure to remit a portion of such to his former wife, plaintiff filed a motion to adjudge defendant in contempt. The matter was submitted to the trial justice on an agreed statement of facts containing nineteen provisions, of which fourteen were not in dispute. The remaining five provisions set forth the beliefs and intentions of plaintiff and defendant, respectively.

According to plaintiff, the purpose of paragraph 10 of the property-settlement agreement was to require that defendant partially reimburse plaintiff for moneys taken by defendant from funds previously inherited by her. On the other hand, defendant stated that he would comply with the terms of the property-settlement agreement but that he did not intend to remit to his former wife any moneys disbursed to him as trust proceeds of his mother's estate. The defendant also stated that the paragraph in question referred only to "inheritances" received and did not contemplate moneys received from any trusts and/or other legal entities.

The court below found that the sum of money distributed to defendant in accordance with his mother's trust would not fall within the meaning of the word "inheritance." Consequently the trial justice refused to award plaintiff the sum of money provided for in the settlement agreement and denied with prejudice plaintiff's motion to adjudge defendant in contempt. The plaintiff appeals, asserting that (1) the trial justice erred in failing to carry relevant case law to its logical conclusion and (2) the funds defendant received upon his mother's death constituted an inheritance.

■ This court has construed "inherit" to mean, in its strictest technical sense, "to take as an heir-at-law, by descent." *Quinn v. Hall*, 37 R.I. 56, 69, 91 A. 71, 76 (1914).

Nonetheless it has been suggested that courts would be inclined to adopt a broader interpretation of words whenever necessary to effectuate the intent of the parties. *Id. See also Hill v. M.S. Alper & Son, Inc.,* 106 R.I. 38, 47, 256 A.2d 10, 15 (1969); *Massasoit Housing Corp. v. Town of North Kingstown,* 75 R.I. 211, 217, 65 A.2d 38, 40 (1949). In doing so, the court must first determine if an ambiguity exists within the language of the contract provision. *Antone v. Vickers,* 610 A.2d 120, 123 (R.I. 1992) (citing *Bush v. Nationwide Mutual Insurance Co.,* 448 A.2d 782, 784 (R.I. 1982)).

The trial court reviewed the property-settlement agreement in its entirety and found that no ambiguity existed regarding the words "inherit" or "inheritance" and that no other meaning was manifested. The trial justice thereafter interpreted the term according to its ordinary meaning and held that trust proceeds are separate and distinct from an inheritance. We respectfully disagree with the trial court's dispositive finding that the property-settlement agreement was unambiguous.

Recently this court stated that "a contract is ambiguous if it is 'reasonably susceptible of different constructions.'" *Id.* (quoting *Westinghouse Broadcasting Co. v. Dial Media, Inc.,* 122 R.I. 571, 579, 410 A.2d 986, 991 (1980)). It is apparent that both plaintiff and defendant understood the term "inheritance" to mean something very different. In accordance with the common use of "inheritance" as recognized in *Quinn,* 37 R.I. at 69, 91 A. at 76, plaintiff believed the term to describe any manner in which defendant would take money as a result of his mother's death. On the contrary, defendant accepted the technical meaning of "inherit" and expected that the amount of money he acquired as a result of his mother's trust would not be considered an "inheritance" because it fell outside the scope of his mother's will. We would be hard-pressed to find that an ambiguity did not exist in this case in light of these two disparate interpretations.

In construing an ambiguous contract provision, it is necessary to examine both the circumstances surrounding the development of the ambiguous terms and the intentions of the parties. *O'Connell v. Finlay,* 583 A.2d 546, 549 (R.I.1990); *Woonsocket Teachers' Guild, Local 951 v. School Committee of Woonsocket,* 117 R.I. 373, 376, 367 A.2d 203, 205 (1976). The property-settlement agreement was entered into for the purpose of determining any and all rights of property, questions of allowance for the support of plaintiff and their minor child, and all other rights otherwise growing out of the marriage relationship. Additionally it was used as a vehicle to ensure repayment of moneys owed to plaintiff at some uncertain time after the parties' divorce. At all times during the formulation and execution of the property-settlement agreement, both plaintiff and defendant were aware of Mrs. Craft's financial status and age. The parties also knew that defendant and his brother were Mrs. Craft's only heirs at law.

Despite the intentions and circumstances surrounding the execution of the property-settlement agreement, the trial justice concluded that the trust proceeds received by defendant as a beneficiary of his mother's trust are distinguishable from taking moneys or items by testate or intestate succession. In her reasoning, the trial justice maintained that the instruments used to effectuate a conveyance or transfer through a trust or either testate or intestate succession are very different and each has its own unique legal significance. The facts of this case lead us to disagree.

The administration of the trust in this case was not so distinguishable from a taking through testate or intestate succession as to constitute a different character of species. Mrs. Craft created a trust giving herself a life estate in certain properties, ordering that the distribution of the corpus would be effectuated upon her death, and designating her only two sons as her beneficiaries. Additionally, Mrs. Craft executed a second codicil to her last will and testament, both of which were duly admitted to probate, that stated:

"[I]f, at the time of my death said trust has been revoked or terminated or, prior

to distribution of my probate estate, has been invalidated, I devise all such property to that one or to those named as trustee or trustees in said trust agreement as it exists at the time of executing this Will, to be held, administered and distributed as a testamentary trust according to the terms thereof."

The use of the trust as a method of transferring property to defendant and his brother upon Mrs. Craft's death served to assure her that her belongings would be distributed evenly to the cotrustees. Mrs. Craft also provided an alternative plan of distribution in the event the trust was revoked, terminated, or invalidated, namely, the taking through a testamentary trust, which is akin to an inheritance. In either case defendant would have received the same divided estate upon his mother's death. We must conclude, then, that the trust proceeds received by defendant as a beneficiary of his mother's trust would not be so distinguishable from taking moneys or items pursuant to his mother's will as to fall outside the meaning of the word "inheritance." Therefore, we find that the use of the term "inheritance" in paragraph 10 refers to all property received by defendant upon his mother's death, including the proceeds of the trust itself.

Lastly, when a provision of a contract or agreement may be construed different ways, the practice of this court is to "adopt that construction which is most equitable and which will not give to one party an unconscionable advantage over the other." *Antone*, 610 A.2d at 123 (quoting *Massasoit Housing Corp. v. Town of North Kingstown*, 75 R.I. 211, 217, 65 A.2d 38, 40 (1949)). To believe that the trust proceeds should not be considered an "inheritance" as the parties had agreed would cause the defendant to receive a windfall since he would have been obligated to pay the plaintiff $40,000 had the same property been distributed to him pursuant to a testamentary trust. Again we find that the more equitable construction here dictates that the trust proceeds be considered an "inheritance" as contemplated by the parties.

For the reasons stated, the plaintiff's appeal is sustained. The order of the Family Court is reversed, and the case is remanded with instructions to proceed in accordance with this opinion.