Kathleen Marie DONELAN

v.

James M. DONELAN.

No. 97–615–Appeal.

Supreme Court of Rhode Island.

Dec. 2, 1999.

John B. Harwood, Pawtucket, for plaintiff.

Lauren E. Jones, Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendant, James M. Donelan (James), appeals from a Family Court order that divided a Keogh retirement account (the Keogh account or the retirement account) equally between himself and his former wife, the plaintiff, Kathleen Kelly (Kathleen).[1] James contends that the Family Court's order improperly modified a non-merged property settlement agreement between himself and Kathleen. He further argues that the Family Court justice erred by granting Kathleen a half share of the retirement account's accumulated interest in addition to granting Kathleen one half of the retirement account's principal. We ordered the parties to show cause why we should not resolve this appeal summarily. No cause having been shown, we proceed to decide the issues before us.

James and Kathleen were married in October 1984. In January 1995 Kathleen filed for divorce. In October 1996 the Family Court entered a property-settlement agreement proposal, dated August

---

1. At the time of trial, the plaintiff had resumed her maiden name.

17, 1996 (the 1996 agreement). With respect to the Keogh account, the 1996 agreement provided that "[t]he Wife agrees that said account shall be valued at the time of the Agreement." It also provided that "[t]he Husband shall transfer through a Domestic Relations Order the sum of $67,500.00 *or whatever 50% of the value of the Keough* [sic] is to the Wife's IRA or other retirement plan as long as that figure is 50 percent of said asset as aforesaid." (Emphasis in original.) In October 1996 the retirement account was valued at $135,000.

As of July 21, 1997, however, no such transfer to Kathleen's IRA or other retirement plan had occurred. In fact, it was not until that date that either party took any action to implement provisions of the 1996 agreement. On that date, the parties submitted a final property-settlement agreement to the Family Court (the 1997 agreement). The 1997 agreement provided that "[t]he Husband shall transfer by way of a Qualified Domestic Relations Order 50 (fifty) percent (approximately $67,-500.00) of the value [of] said Keough [sic] to the Wife through an IRA or other retirement plan of the Wife's choosing." The 1997 agreement also contained a handwritten provision, initialed by the parties, which stated that "[t]he Parties shall submit to the Court the issue of when interest/profits shall commence on the 50% value of the said Keough [sic] Plan as of October 8, 1996 up to the resolution of this issue." Along with the 1997 agreement, the Family Court entered a final judgment of divorce on July 21, 1997. The final judgment of divorce specified that the 1997 agreement was incorporated, but not merged, into the final judgment of divorce. The final judgment provided in part that: "[T]he Defendant shall transfer by way of a Qualified Domestic Relations Order 50 (fifty) percent ($67,500.00) of the value of said Keough [sic] to the Plaintiff through an IRA or other retirement plan of the Plaintiff's choosing."

In September 1997 the Family Court held a hearing on Kathleen's motions to include 50 percent of the accrued interest in the Keogh account, representing interest earned from October 8, 1996 to September 1997, as part of her share of the Keogh account and to hold James in contempt for failing to make payments to her as specified in the 1997 agreement. At the hearing, Kathleen testified that she had not received payment of her 50 percent retirement account share since the 1996 agreement was entered. James also testified at the hearing, stating that he had not paid to Kathleen half of the Keogh account because he was still waiting for a qualified domestic relations order from her. The court noted that the 1997 agreement provided for a fifty-fifty distribution of the Keogh account and that interest should be added to whatever share she was owed. The court then ordered James to pay to Kathleen 50 percent of the retirement account, with interest accruing from October 1996. The trial justice held that this payment should reflect the present value of the Keogh account, including accrued interest. An order encapsulating the court's decision was entered on September 26, 1997.

On appeal, James claims that the Family Court justice had no authority to grant Kathleen an equal share of accrued interest from the retirement account. He contends that the trial justice, in effect, modified the parties' property-settlement agreement. He points out that the parties' agreement specified that the retirement account was to be valued as of October 1996; therefore, he claims, the granting of a half share of the account's value as of September 11, 1997, contravened the 1996 agreement. James contends that a Family Court justice may not modify a non-merged property settlement agreement. He also asserts that, unlike alimony or support obligations, there is no statutory basis to award interest in this situation.

In response, Kathleen argues that the 1996 agreement was not a binding contract. Thus, she claims that neither party took any action to carry out the terms of the 1996 agreement. Kathleen further argues that if the 1996 agreement is considered a binding contract, its provisions specify a 50 percent distribution of the retirement account "at the time of the Agreement." She argues that the 1996 agreement was not finalized until the 1997 agreement was executed, which reflected numerous changes from the 1996 agreement. Therefore, she contends, the retirement account should be valued as of the July 21, 1997, entry date for the 1997 agreement. Kathleen also notes that both agreements provide that she be entitled to a 50 percent distribution of the retirement account. She contends that any ambiguity about the distribution of accumulated interest should be construed in an equitable fashion. Finally, Kathleen argues that the parties, in effect, orally modified the written agreement during the September 1997 hearing before the Family Court. There, James requested that the trial justice modify the payment schedule contained in the 1997 agreement. The court granted James's request. Kathleen contends that James should be bound not only by the modifications granted by the court, but also by the court's decision to distribute 50 percent of the accrued interest in the Keogh account to Kathleen.

■ "The award of interest in the absence of statutory authorization is extraordinary and will be granted only under the most unusual circumstances * * *." *Bristol and Warren Gas Co. v. Burke,* 493 A.2d 834, 836 (R.I.1985). However, the General Assembly's 1976 amendment (P.L. 1976, ch. 146, § 1) to G.L.1956 § 9–21–10 provided for the award of interest for "any civil action," allowing breach-of-contract litigants to collect interest on judgments. *Gott v. Norberg,* 417 A.2d 1352, 1357 (R.I. 1980). We have held that a property settlement agreement that is independent of the divorce judgment is governed by contract principles. *Attilli v. Attilli,* 722 A.2d 268, 269 (R.I.1999)(per curiam); *Borden v. Borden,* 649 A.2d 1028, 1030 (R.I.1994). Moreover, "a contract is ambiguous if it is 'reasonably susceptible of different constructions.'" *Flynn v. Flynn,* 615 A.2d 119, 121 (R.I.1992) (quoting *Vickers Antone v. Vickers,* 610 A.2d 120, 123 (R.I. 1992) and *Westinghouse Broadcasting Co. v. Dial Media, Inc.,* 122 R.I. 571, 579, 410 A.2d 986, 991 (1980)). "[W]hen a provision of a contract or agreement may be construed different ways, the practice of this court is to 'adopt that construction which is most equitable and which will not give to one party an unconscionable advantage over the other.'" *Flynn,* 615 A.2d at 122 (quoting *Antone,* 610 A.2d at 123 and *Massasoit Housing Corp. v. Town of North Kingstown,* 75 R.I. 211, 217, 65 A.2d 38, 40 (1949)).

We note at the outset that the property-settlement agreement was not merged with the divorce judgment. Therefore, we proceed to construe the property-settlement agreement, as we believe the trial justice did, by utilizing basic principles of contract law.

■ In examining both the 1996 and 1997 agreements, we observe that no apparent provision exists for the division of interest. However, the 1997 agreement appears to modify and supersede the 1996 agreement. The pertinent section concerning the division of the retirement account in the 1997 agreement does not specify that the retirement account be valued at the time of agreement. Rather, it simply specifies that "50 (fifty) percent (approximately $67,500.00) of the value [of] said Keough [*sic*] account shall be distributed to the plaintiff." However, and most significantly for purposes of this appeal, the 1997 agreement specifies that the issue of when interest/profits shall commence to accrue on the 50 percent share shall be submitted to the Family Court. Thus, the parties expressly agreed in the 1997 agreement to allow the court to decide this aspect of the retirement account

issue. Otherwise, the 1997 agreement appears to be ambiguous as to whether accrued interest/profits were to be divided evenly between the parties. The handwritten addition to the 1997 agreement seems to indicate that the parties thought that some amount of interest and/or profits should be added to the parties' 50 percent shares, but because they could not agree on when exactly the interest/profits calculation should commence, they agreed to let the court decide this issue. If the parties had not agreed that some amount of interest and/or profits should be added to their half shares in the account, there would have been no need for them to allow the court to decide when the interest/profits calculation would commence.

Accordingly, pursuant to the parties' express agreement allowing the court to do so, and in light of the equitable principles set out in *Flynn* for construing non-merged property settlement agreements, we conclude that the Family Court did not err in ordering that Kathleen receive a 50 percent share of the present value of the retirement account as of September 26, 1997, including any interest that accrued from October 1996. Interest shall continue to accrue thereon until half the retirement account is distributed to Kathleen.

For these reasons, James's appeal is denied and we affirm the Family Court's order.