Sharie PAUL

v.

Marvin Lester PAUL.

No. 2008–222–Appeal.

Supreme Court of Rhode Island.

Jan. 11, 2010.

Paul J. Russo, Esq., North Kingston, for Plaintiff.

Paul M. Finstein, Esq., Warwick, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

### OPINION

Justice FLAHERTY, for the Court.

Before this Court is an appeal by Marvin Lester Paul (Marvin) from a Family Court post-judgment order in favor of his former wife, Sharie Paul (Sharie). This case came before the Court for oral argument on December 2, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the parties' arguments and considering the memoranda submitted on behalf of each of them, we are satisfied that cause has not been shown, and we proceed to decide this appeal at this time without further briefing or argument. For the reasons set forth in this opinion, we affirm the order of the Family Court.

### I

### Facts and Travel

In December 2005, after nearly ten years of marriage, Sharie filed a complaint

for divorce.[1] Just before trial was to begin, the parties completed a Marital Settlement Agreement (agreement). However, some last-minute haggling resulted in the parties making handwritten changes to the previously negotiated and typewritten agreement. Consequently, some parts of the agreement were lined out by hand, and other handwritten language was substituted for what had been typed. These holographic revisions concerned the disposition of the parties' rather extensive real estate interests. After a hearing on the merit s, the trial justice granted both Shade's complaint and Marvin's counterclaim for an absolute divorce on the grounds of irreconcilable differences. The trial justice found that the hurriedly amended agreement divided the parties' real and personal property and that, based on the testimony of the parties that they freely and voluntarily entered into the agreement and that they understood it and believed it to be fair and equitable, the trial justice approved the agreement. He ordered that it be incorporated, but not merged in the decision for divorce.

Critical to this case, the agreement provides in paragraph twelve that Marvin will pay Sharie $500,000 as an equitable distribution. The agreement further specifies that that sum shall be paid on or before March 28, 2012.[2] The payments due Sharie were to be realized through the sale of specified real estate in which the parties had an interest. The agreement requires that Sharie receive 90 percent of the net proceeds received from the sale of any real estate delineated in the agreement, those proceeds to be applied toward the $500,000. Additionally, the agreement provides that if Marvin has not paid the $500,000 by March 28, 2012, "then in that event the Wife shall have the right to foreclose on any and all remaining properties covered by her mortgage deed and note in order to satisfy the outstanding moneys due her."

The nub of this dispute is focused on paragraph seven of the agreement.[3] Paragraph 7.A enumerates eight parcels of real estate in which title is held in Marvin's name. As originally drafted, paragraph 7.B.l(b) states,

"The Husband shall take whatever steps are necessary in order to list for sale on the open market forthwith all of the above properties except the property at 199 Providence Street, West Warwick, RI; 130 Pilgrim Parkway, Warwick, RI and 99 Vera Street, Providence, RI if this has not already been done."

However, on the day their case was heard on the merit s, they amended paragraph 7.B.1(b) to read as follows:

"The Husband shall take whatever steps are necessary in order to list for sale on the open market forthwith all of the above properties except the property listed at 199 Providence Street, West Warwick, RI; 130 Pilgrim Parkway, Warwick, RI and 110 Pilgrim Par[k]way Warwick RI. 99 Vera Street Warwick RI shall not be listed for sale until 4–2–2008."

The record of the hearing is unclear as to the parties' understanding of the handwritten amendments.

---

1. Sharie filed a complaint for separate maintenance without commencement of divorce proceedings in June 2005. In December 2005, she moved to amend the original complaint to a complaint for divorce. The case was reached for trial on April 2, 2007.

2. As of the time of oral argument, Sharie had received $15,000 of the $500,000 to which she is entitled under the agreement.

3. Attached as an addendum is page three of the agreement, which contains the disputed paragraph.

The final judgment of divorce between the parties entered on August 27, 2007. In January 2008, Sharie filed a motion in which she requested that the court order the listing for sale, forthwith, the properties located at 199 Providence Street, West Warwick, R.I.; 130 Pilgrim Parkway, Warwick, R.I.; 110 Pilgrim Parkway, Warwick, R.I.; and 99 Vera Street, Warwick, R.I. Marvin objected to the motion. He maintained that he had fully complied with the agreement and that the request for the immediate sale of all four properties and proceeds thereof would "constitute no more than a blatant attempt to have the Court rewrite the terms of the [P]roperty Settlement Agreement." The Family Court conducted a hearing on April 9, 2008, to resolve the dispute.

The issue before the Family Court was at what point in time the agreement required that the properties listed in paragraph 7.B.l(b) be listed for sale. The bone of contention between the parties was how to construe the handwritten changes to paragraph 7.B. The parties agreed that the property at 99 Vera Street would be immediately placed on the market for sale. However, still in controversy was whether the agreement also required the three remaining properties (199 Providence Street, West Warwick, R.I.; 130 Pilgrim Parkway, Warwick, R.I.; and 110 Pilgrim Parkway, Warwick, R.I.) to be listed for sale forthwith, or whether the Agreement exempted those three properties from being offered for sale at any particular time. Central to the dispute was the significance of a punctuation mark after the handwritten abbreviation for the state of Rhode Island set forth in the handwritten changes to the agreement. Sharie argued that the agreement required that the properties listed in paragraph 7.B.l(b) be given a one-year reprieve from being listed for sale until April 2, 2008, and thus they should have been listed for sale after that date. Marvin

argued that the punctuation mark following "110 Pilgrim Par[k]way Warwick RI" was a period that ended a sentence, and therefore only 99 Vera Street was affected by the one-year reprieve, and therefore he was not required to list the other three properties for sale on any specific date. The trial justice said in the record that his understanding of the agreement was that Marvin had agreed to pay Sharie $500,000 and the "mechanism" for producing that amount for her was through the sale of the properties listed in the agreement.

On April 15, 2008, the Family Court issued a bench decision. The trial justice found paragraph 7.B.1(b) to be ambiguous, based on the parties' arguments and his examination of the four corners of the agreement. Citing general contract principles, the trial justice ordered that all four properties be placed on the market for sale. He found that certain properties already had been foreclosed upon by creditors and that it was "iffy" whether the sale of the remaining properties would garner sufficient money to satisfy the equitable distribution due to Sharie. Further, the trial justice found that a contrary construction would place Marvin "in total control" over whether the properties ever were sold. Thus, on May 23, 2008, the Family Court granted Shade's motion to enforce and directed Marvin to place the properties at 199 Providence Street, 130 Pilgrim Parkway, 110 Pilgrim Parkway, and 99 Vera Street on the market for sale. From this ruling, Marvin timely appealed to this Court.

## II

### Issues on Appeal

The issues in this case arose from the parties' opposing views on the impact of certain punctuation in their agreement, and how the interpretation of a period

point impacts their respective rights and obligations under the agreement. The primary issue on appeal is whether the trial justice erred as a matter of law when he found that the agreement was ambiguous on its face. Also at issue is whether the trial justice abused his discretion when he found that Marvin's interpretation of paragraph 7.B.l(b) of the agreement was not the most equitable construction, and therefore construed the agreement as requiring the immediate listing for sale of the properties set forth in paragraph 7.B.1(b).

## III

### Standard of Review

■■■ The existence of ambiguity in a contract is a question of law. *Young v. Warwick Rollermagic Skating Center, Inc.*, 973 A.2d 553, 558 (R.I.2009) (citing *Gorman v. Gorman*, 883 A.2d 732, 738 n. 8 (R.I.2005)). We review questions of law *de novo. Holden v. Salvadore*, 964 A.2d 508, 513 (R.I.2009) (citing *Richards v. Halder*, 853 A.2d 1206, 1209 (R.I.2004)). Therefore, "the holding of a trial court (including the Family Court) about the existence or nonexistence of ambiguity in the terms of the contract is freely reviewable by this Court." *Gorman*, 883 A.2d at 738 n. 8 (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates*, 763 A.2d 1005, 1007 (R.I.2001)). On the other hand, we afford deference to the trial justice's findings of fact and will not disturb them unless he or she "misconceived the relevant evidence or was otherwise clearly wrong." *Horton v. Horton*, 891 A.2d 885, 888 (R.I.2006) (quoting *Koutroumanos v. Tzeremes*, 865 A.2d 1091, 1097 (R.I.2005)). Thus, absent an abuse of discretion, "this Court will accept the factual findings of the trial justice." *Id.* (citing *Cardinale v. Cardinale*, 889 A.2d 210, 217–18 (R.I.2006)).

## IV

## Discussion

## A

### The Family Court's Ruling that the Agreement is Ambiguous

■■■ An ambiguity exists if the contract provision is "reasonably susceptible of different constructions." *Andrukiewicz v. Andrukiewicz*, 860 A.2d 235, 238 (R.I. 2004) (quoting *Flynn v. Flynn*, 615 A.2d 119, 121 (R.I.1992)). In making such a determination, "we view the agreement in its entirety and give to its language its 'plain, ordinary and usual meaning.'" *Vickers Antone v. Vickers*, 610 A.2d 120, 123 (R.I.1992) (quoting *Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550, 552 (R.I.1990)). However, "[b]ecause ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate * * * the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner." *Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc.*, 852 A.2d 535, 542 (R.I.2004) (quoting *Textron, Inc. v. Aetna Casualty and Surety Co.*, 638 A.2d 537, 541 (R.I.1994)) (emphasis omitted).

■■■ On appeal, Marvin argues that paragraph 7.B.l(b) "is clear and unambiguous on its face." He contends that the paragraph consists of two sentences: the first requiring the listing for sale of all the properties previously enumerated except for "the business property and the two condominiums" and the second stating that the 99 Vera Street property "need not be listed for sale until April of 2008" He points to the "style and grammar of the entire document," specifically previous ab-

breviations of "RI" without any punctuation, to support his position.

On the other hand, Sharie argues that the handwritten punctuation that follows the abbreviation for the state of Rhode Island in the handwritten additions to paragraph 7.B.1(b), the paragraph "can reasonably be construed in two manners— it can be read as two separate sentences or it can be read as one sentence with a state abbreviation." Therefore, she maintains that the Family Court correctly found that the agreement "was ambiguous on its face." Additionally, in response to Marvin's argument that his construction is consistent with the grammar and style of the agreement, Sharie counters that it does not so comport. She argues that although the typed references to "RI" do not contain punctuation, the instances in which "RI" is handwritten are, in fact, set off with periods.

After reading the agreement and the disputed paragraph and giving the terms their ordinary and usual meaning, we agree with Sharie and hold that paragraph 7.B.1(b), containing handwritten changes, is reasonably susceptible to two different meanings and therefore ambiguous. *See Andrukiewicz*, 860 A.2d at 238. One reasonably may read the paragraph both as one complete sentence reprieving all four properties from being listed for sale for just one year or as two sentences that defer the listing for sale of one property, but exempt the other three properties from being offered for sale. As a result of the uncertainty that inheres in the agreement's handwritten changes, particularly the inconsistent punctuation of the abbre-

viation for the state of Rhode Island, this paragraph is not susceptible to merely "one reasonable meaning" when read in a "common sense manner." [4] *Garden City Treatment Center, Inc.*, 852 A.2d at 542 (quoting *Textron, Inc.*, 638 A.2d at 541). Therefore, it is our opinion that the trial justice was correct when he found paragraph 7.B.1(b) to be ambiguous.

## B

### The Family Court's Finding of Most Equitable Construction

▇ Marvin argues that the Family Court overlooked the "specific provisions of the scheme fashioned by the parties" when it found that an exemption of the properties in 7.B.1(b) from listing for sale would allow Marvin to avoid his obligation to pay Sharie the equitable distribution of $500,000. He maintains that his obligations to Sharie are "highly leveraged and the consequences of his failure to do so are quite serious." Consequently, Marvin argues that a requirement for the listing for sale of all of the property actually affords Sharie "greater leverage than was negotiated between the parties."

Sharie argues that the trial justice did not misconceive the evidence or abuse his discretion when he found that Marvin's interpretation of the ambiguous provision was not the most equitable. She asserts that the trial justice's conclusion is supported by his finding that some of the properties already had been foreclosed upon and "it would appear that it is very iffy even with the remaining properties

4. We wish to express our concern that the parties hastily disposed of approximately $1 million in real property in what appears to be a slapdash manner as the trial was about to begin. Property settlement agreements such as the one at issue here are intended to clearly and amicably distribute the assets and lia-

bilities of a divorcing couple, while at the same time minimizing rancor and personal animus. Obviously, there was a failure to accomplish that goal here, and the result was the very type of judicial interpretation that the parties sought to avoid.

that the plaintiff will receive the total amount of the funds due her." Sharie contends that not requiring Marvin to immediately list the properties for sale would risk additional foreclosures before she is able to enforce her rights with respect to the remaining properties herself in March 2012.[5] Thus, potentially, she would have no means to recover the $500,000 that Marvin had agreed to pay to her. Finally, Sharie argues that eliminating Marvin's obligation to sell these three properties gives him "an unconscionable advantage" and "flies in the face of the intent of the agreement * * * to sell the property so as to satisfy [Marvin's] $500,000 obligation to [her]."

▆▆▆ A property settlement agreement "that is not merged into a divorce judgment retains the characteristics of a contract." *Riffenburg v. Riffenburg*, 585 A.2d 627, 630 (R.I.1991); *see Ritter v. Mantissa Investment Corp.*, 864 A.2d 601, 607 (R.I.2005) (holding property settlement agreement that was not merged into the divorce judgment "retains" contract "characteristics") (quoting *Riffenburg*, 585 A.2d at 630). Therefore, a property settlement agreement such as the agreement here that has been incorporated by reference in, but not merged with, a divorce judgment can be modified only if the parties consent or if a ground for reformation under contract law, such as ambiguity, exists. *Gorman*, 883 A.2d at 740–41 (citing *Riffenburg*, 585 A.2d at 630). As we have discussed, this agreement is ambiguous; thus, the Family Court had the authority to construe the ambiguous contract provision and modify the agreement accordingly. *Id.* at 746.

▆▆▆ When he does so, the trial justice "should adopt that construction which is most equitable and which will not give to one party an unconscionable advantage over the other." *Donelan v. Donelan*, 741 A.2d 268, 270 (R.I.1999) (quoting *Flynn*, 615 A.2d at 122). Additionally, this Court has held that "it is necessary to examine both the circumstances surrounding the development of the ambiguous terms and the intentions of the parties." *Flynn*, 615 A.2d at 121. Indeed, "one of the cardinal rules of construction of agreements is that the meaning should be gathered from the entire context and the language should be interpreted so as to subserve, and not subvert, the general intention of the parties * * *." *Massasoit Housing Corp. v. Town of North Kingstown*, 75 R.I. 211, 217, 65 A.2d 38, 40 (1949) (citing 12 Am. Jur. *Contracts* § 241 (1938)).

This Court affords great deference to the trial justice's findings of fact that support his conclusion that Sharie's interpretation of the ambiguous paragraph was the most equitable in light of the parties' intentions under the agreement. *See Horton*, 891 A.2d at 888 (citing *Koutroumanos*, 865 A.2d at 1097). Thus, we will overturn these findings only if he overlooked or misconceived the relevant evidence or otherwise was clearly wrong. *Id.* It is our opinion that the trial justice did not overlook or misconceive the relevant evidence when he found that Marvin's construction of the ambiguous provision, which would exempt several of the properties from listing for sale, was not the most equitable because such a construction is ineffective to achieve the agreement's overarching goal, which is to provide Sharie with $500,000, produced by the sale of the enumerated properties.

We hold that the findings of the trial justice are supported by the record, and we decline to disturb them on review. He

---

5.  Sharie holds a mortgage on four other properties designated as part of the marital estate but not referred to in the disputed paragraph seven of the agreement.

found that the agreement directed "certain properties that were marital assets" to be sold and Sharie should receive the "net proceeds * * * until she receives the sum of $500,000." This finding is supported by the agreement's provision that directs Marvin to pay to Sharie the amount of the equitable distribution and then sets forth in detail the mechanism through which this distribution will be realized, specifically, the sale of "any parcel of real estate identified in [the] Agreement." The trial justice based his conclusion on the fact that several of the properties already had been foreclosed upon, thus making it likely that the remaining properties could not generate the amount that Marvin had agreed to pay Sharie unless they were listed for sale immediately. It is our opinion that this is a logical conclusion supported by the record, and thus is not clearly wrong.

Further, the trial justice was not clearly wrong when he found that Marvin's interpretation of the ambiguous provision would give him an unconscionable advantage over Sharie by affording Marvin an inordinate amount of control with respect to disposition of the property and, consequently,

over his obligation to pay her $500,000. *See Donelan,* 741 A.2d at 270. Similarly, he also was not clearly wrong when he found that Marvin's interpretation would "subvert" the intention of the parties, which is clearly embodied in the agreement, that the sale of the enumerated properties is the primary mechanism through which to generate the funds to satisfy the equitable distribution due to Sharie. *See Massasoit Housing Corporation,* 75 R.I. at 217, 65 A.2d at 40–41. For these reasons, we hold that the trial justice did not err when he ruled that Shade's interpretation was the most equitable construction of the ambiguous provision and when he ordered the three properties in question to be listed for sale forthwith.

## V

### Conclusion

We affirm the order of the Family Court, to which we remand the record in this case.

ATTACHMENT

<u>ADDENDUM</u>

7. A. The parties acknowledge that the following real estate stands in the name of the Husband:

1. 112 Grove Avenue, Warwick, RI
2. 2260 West Shore Road, Warwick, RI
3. 39-41 McNiff Street, West Warwick, RI
4. 147 Prospect Street, Pawtucket, RI
5. 199 Providence Street, West Warwick, RI
6. 99 Vera Street, Warwick, RI
7. 110 Pilgrim Parkway, Warwick, RI
8. 130 Pilgrim Parkway, Warwick, RI

B. The parties further acknowledge that Oakland Beach Village is owned in the name of the Husband and William Fooks and consists of real estate, buildings and improvements located at:

1. 858 Oakland Beach Avenue, Warwick, RI and Strand Avenue, Warwick, RI ~~comprising~~ of Assessor's Plat 375 Lots 430, 431, 432, 433, 555, 556, and 557. *AND*

With respect to the above parcels of real estate the parties agree as follows:

a) The Husband and/or William Fooks (who is a party to this action) shall execute a mortgage on all of the above-encumbered parcels of real estate to secure the payment of moneys due to the Wife pursuant to paragraph 13 of this Property Settlement Agreement.

b) The Husband shall take whatever steps are necessary in order to list for sale on the open market forthwith all of the above properties except the property at 199 Providence Street, West Warwick, RI; 130 Pilgrim Parkway, Warwick, RI and ~~99 Vera Street, Providence, RI if this has not already been done.~~ *110 PILGRIM PARKWAY WARWICK R.I, 99 VERA ST PROVIDENCE RI SHALL NOT BE LISTED FOR SALE UNTIL 4-2-2008.*

c) Upon the sale of any of the above enumerated properties the Wife shall be notified of the closing date and given a copy of the HUD for review before closing, if possible, and will be required to give to the Husband or the closing officer a partial discharge of her mortgage on that particular piece of property to be recorded only upon her receiving 90 percent of the net proceeds derived from the sale of the real estate. At any closing of any of the above-mentioned properties from the net proceeds derived as a result of said sale, 20 percent shall be withheld ~~to satisfy any capital gains that may be due and one-half shall be distributed~~ *AND DEPOS.* ~~to each of the parties to satisfy the payment of capital gains attributable to the Husband and the~~ *INTO AN* ~~Wife due Internal Revenue Service and/or the State of Rhode Island Division of Taxation.~~ *INTEREST* From the remaining proceeds the Wife shall receive 90 percent thereof to be applied towards *BEARING* those sums due her in accordance with paragraph 13 of this Agreement. The Husband further *ESCROW* shall be required to turn over to the Wife any and all records at the time of closing establishing *ACCOUNT* exactly what the capital gains is that is due on each particular piece of property. If at the time *IN THE* of the closing on any of the above-enumerated properties there are any past due mortgage *NAMES O.* payments, taxes, insurance or other municipal charges outstanding, the same shall be paid at *BOTH PAR* *ATTORNEYS. THE SAME SHALL BE USED TO SATISFY ANY CAPITAL GAINS TAXES DUE IRS AND/OR STATE OF R.I. THAT THE HUSBAND MAY INC ON SALE OF SAID PROPERTIES.* 3