Susan B. McMAHON

v.

John J. McMAHON.

No. 2007–257–Appeal.

Supreme Court of Rhode Island.

Oct. 14, 2008.

Robert Parker, Providence.

Karen Bernard.

## ORDER

The defendant, John J. McMahon (defendant), appeals from a Family Court order granting the plaintiff, Susan B. McMahon's[1] (plaintiff), motion to enforce the terms of a property settlement agreement (PSA) and ordering the defendant to execute a qualified domestic relations order (QDRO) consistent with that agreement. This case came before the Supreme Court for oral argument on September 30, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we deny and dismiss the defendant's appeal.

The facts in this case are not in dispute. The parties were married on December 2, 1978, and were divorced by final judgment on December 10, 1993. A PSA signed by the parties was incorporated, but not merged, into the final decree. The PSA contains provisions governing the distribution of defendant's military pension and his State of Rhode Island Employees' Retirement System pension (state pension). At issue in this case is the provision governing the distribution of defendant's state pension. The relevant provision reads:

> "The Wife is also entitled to one-half the value, at the date of the entry of the Final Decree of divorce, of the Husband's pension from the State of Rhode Island. The pension presently has a value of approximately Thirty–Five [sic] Thousand ($35,000.00) Dollars, but is not vested. The Wife, therefore, shall be entitled to one-half of the Rhode Island pension multiplied by a fraction in which the numerator is eight (8), which is the number of years of active service in the State Government that the Husband has, plus four (4) years he has purchased as a result of his military time for a total of twelve (12), and the denominator which is the total number of years for retirement purposes when the Husband retires from or leaves State service.

> "The parties understand that the Wife is this date claiming her right to a share of each of the pensions and that her claim is not conditional."

On October 15, 2005, defendant retired from state service having accrued 29.2993 years of eligibility for retirement purposes. The defendant was able to retire earlier than expected by purchasing approximately five years of employment credit from the Employees' Retirement System. Thereafter, defendant began receiving monthly retirement benefit payments from the state. The plaintiff, however, did not receive any of defendant's benefits because a QDRO had not been issued. In an attempt to carry out the PSA pension provision, the parties subsequently exchanged draft QDROs, but disagreed on the inter-

---

1. After the commencement of this appeal, plaintiff changed her name to Susan M. Boudreau. For consistency with the record and prior filings, we refer to her herein as Susan B. McMahon.

pretation of the language governing the division of defendant's state pension. The plaintiff contended that she is entitled to receive 20.48 percent[2] of the value of defendant's pension at the date of his retirement. Conversely, defendant maintained that plaintiff is entitled to only 50 percent of the value of the pension as of the date when the parties' final divorce decree was entered.

On November 10, 2006, plaintiff filed a complaint in the Family Court to enforce the PSA. In the complaint, plaintiff asked the Court to order defendant to sign plaintiff's proposed QDRO. The trial justice decided the case in a bench decision on May 4, 2007. An order encompassing his decision was entered on June 15, 2007. The trial justice found that the state pension provision in the PSA was clear and unambiguous and that plaintiff's interpretation of it was correct. He ordered the parties to execute a QDRO in conformance with plaintiff's interpretation of the PSA. The trial justice also ordered defendant to pay the arrearage due to plaintiff from the retirement benefits he had received from the state since his retirement. The defendant is before this Court on appeal of the trial justice's order.

On appeal, defendant argues that the trial justice erred in finding the language of the PSA clear and unambiguous given the two different interpretations advanced by the parties. An incorporated, non-merged property settlement agreement, like any other contract, is considered ambiguous if it is " 'reasonably susceptible of different constructions.' " *Donelan v. Donelan*, 741 A.2d 268, 270 (R.I.1999) (quoting *Flynn v. Flynn*, 615 A.2d 119, 121

(R.I.1992)). "When contract language is clear and unambiguous, words contained therein will be given their usual and ordinary meaning and the parties will be bound by such meaning." *Singer v. Singer*, 692 A.2d 691, 692 (R.I.1997) (mem.) (citing *Aetna Casualty & Surety Co. v. Graziano*, 587 A.2d 916, 917 (R.I.1991)). Furthermore, when determining the usual and ordinary meaning of contractual language "every word of the contract should be given meaning and effect; an interpretation that reduces certain words to the status of surplusage should be rejected." *Andrukiewicz v. Andrukiewicz*, 860 A.2d 235, 239 (R.I.2004).

Here, we agree with the Family Court that the pension provision is unambiguous because it is reasonably susceptible to only one construction—the pension is to be calculated using the formula in the provision's third sentence. The provision's first sentence expresses the agreement of the parties that plaintiff is entitled to one-half of the marital portion of defendant's pension. The second sentence describes the current value of the pension at the time of divorce—$35,000—but points out that it has not yet vested. Importantly, the third sentence continues by stating that "[t]he Wife, *therefore*, shall be entitled to," before laying out a detailed mathematical formula with defined terms and quantities to be used in calculating plaintiff's share of the pension. (Emphasis added.) The language of the provision is unambiguous. Because defendant's pension had not vested at the time the parties executed the PSA, the formula in the third sentence provides the means to calculate plaintiff's one-half share of the marital portion when

---

2. The plaintiff calculated this percentage by following the formula set out in the third sentence of the property settlement agreement's (PSA) state pension provision. She multiplied one-half by the fraction of twelve (the number of years in state service defendant had accrued at the time of the final divorce decree) over 29.2993 (the total number of years of state service defendant had accrued at the time of his retirement).

the pension finally vested at defendant's retirement.

The defendant would have us disregard the provision's third sentence and calculate the pension simply by dividing in half the value of the pension at the time the final divorce decree issued. Doing so, however, would not comply with our mandate in *Andrukiewicz* that courts shall give meaning and effect to every word of the contract. *See Andrukiewicz*, 860 A.2d at 239. Because the pension provision is unambig-uous, we will not ignore any of the provision's words, let alone entire sentences.[3]

For the foregoing reasons, we affirm the order of the Family Court.

Justice GOLDBERG did not participate.

---

**3.** The defendant also challenges the trial justice's determination that defendant is in arrears to plaintiff for benefit payments that defendant has received since his retirement. The defendant explains that his retirement on October 15, 2005, occurred approximately five years earlier than anticipated, and that it was made possible only by his purchase of state service credits with his own post-divorce money. He submits, therefore, that plaintiff's receipt of her share of the pension benefits should be delayed until defendant's original expected date of retirement—presumably sometime in the year 2010.

According to the PSA, the denominator in the formula is "the total number of years for retirement purposes when the husband *retires from or leaves State service.*" (Emphasis added.) The PSA places no restriction on plaintiff's entitlement as to how defendant acquires his years of service for retirement eligibility, whether it be by actual years served or, as in this case, by the purchase of additional years of credited time. The manner in which defendant achieved his actual retirement date is irrelevant to plaintiff's entitlement to a portion of the pension benefits distributed thereafter.